1   CARMEN PLAZA DE JENNINGS (SBN 091742)
    cpdjennings@pjclawyers.com
2   JAYNE BENZ CHIPMAN (SBN 140048)
    jchipman@pjclawyers.com
3   PLAZA DE JENNINGS & CHIPMAN LLP
    1000 Marina Village Parkway, Suite 110
4   Alameda, CA 94501
    Telephone: (510) 319-7080
5
6   Attorneys for Defendants
    THE FOOTHILL-DE ANZA COMMUNITY
7   COLLEGE DISTRICT, DE ANZA COMMUNITY
    COLLEGE, LEE LAMBERT, LLOYD A.
8   HOLMES, PATRICK AHRENS, LAURA CASAS,
    PEARL CHENG, PETER LANDSBERGER,
9   GILBERT WONG, ALICIA CORTEZ, THOMAS
    RAY, CHRISTINA ESPINOSA-PIEB, and LYDIA
10  HEARN

11                  UNITED STATES DISTRICT COURT

12              NORTHERN DISTRICT OF CALIFORNIA

13                      SAN JOSE DIVISION

14

15  TABIA LEE,                           Case No. 5:23-cv-03418-PCP

16          Plaintiff,                   **DEFENDANTS' NOTICE OF MOTION
                                         AND MOTION TO DISMISS SECOND
17  vs.                                  AMENDED COMPLAINT PURSUANT TO
                                         FRCP 12(B)(6); MEMORANDUM OF
18  THE FOOTHILL-DE ANZA                 POINTS AND AUTHORITIES IN
    COMMUNITY COLLEGE DISTRICT,          SUPPORT THEREOF**
19  DE ANZA COLLEGE, PATRICK J.
    AHRENS, LAURA CASAS, PEARL
20  CHENG, PETER LANDSBERGER, LEE        **Date:** October 3, 2024
    LAMBERT, and GILBERT WONG, in        **Time:** 10:00 a.m.
21  their official capacities; CHRISTINA **Judge:** Hon. P. Casey Pitts
    ESPINOSA-PIEB, in her official and   **Courtroom:** 8
22  individual capacities; ALICIA CORTEZ,
    LYDIA HEARN, LLOYD A. HOLMES,
23  and THOMAS RAY, in their individual
    capacities,
24
25          Defendants.

26

27

28

---

PLAZA DE JENNINGS & CHIPMAN LLP
ATTORNEYS AT LAW
ALAMEDA

# TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTORY STATEMENT ................................................................................ 2

II. LEGAL STANDARDS FOR MOTION TO DISMISS ............................................... 3

III. ARGUMENT ............................................................................................................... 4

    A.    Count 1 Must Be Dismissed Because Plaintiff Has Failed To Adequately
             Allege A  First Amendment Free Speech Retaliation Claim For Damages
             Under 42 U.S.C. § 1983 Against Individual Defendants Holmes, Espinosa-Pieb,
             Ray, Hearn Or Cortez ........................................................................................... 4

          1.    Legal Standard For Stating A First Amendment Retaliation Claim
                 Under 42 U. S. C. § 1983 Against An Individual Defendant .......................... 4

          2.    The Court's May 7th Order Specifying What Lee Must  Plausibly
                 Allege In Any Amended Complaint To State A First Amendment
                 Retaliation Claim Against Any Of The Individual Defendants ..................... 5

          3.    Plaintiff Has Not Adequately Pleaded That Her Alleged Speech
                 At Issue In Count 1 Was Speech Protected By The First Amendment .......... 6

          4.    Plaintiff Has Not Identified As Required For Each Defendant
                 How The Defendant Violated Any Of Her Protected Speech Or
                 How The Defendant's Alleged Violation Caused Her Injury ...................... 11

    B.    Count 2 Must Be Dismissed Because Plaintiff Has Failed To Adequately
             Allege A First Amendment Free Speech Censorship Claim For Damages
             Under 42 U.S.C. § 1983 Against Holmes, Espinosa-Pieb, Ray, Hearn Or Cortez ...... 15

    C.    Counts 1 And 2  Fail To State A Claim For Prospective Injunctive Relief
             Against Defendants Sued In Their Official Capacities ................................................ 16

    D.    Each Individual Employee Defendant Sued In Their *Individual Capacity*
             Should Be Dismissed With Prejudice From Plaintiff's Section 1983 Claims
             (Counts 1 and 2) Due To Qualified Immunity ............................................................ 17

    E.    Count 3 For Hostile Work Environment In Violation Of Title VII Should Be
             Dismissed For Failure To State A Claim ...................................................................... 19

    F.    Count 4 For Retaliation In Violation Of Title VII Should Be Dismissed In
             For Failure To Exhaust Administrative Remedies And Failure To State A Claim ..... 20

    G.    Count 5 For Violation Of California's Fair Employment And Housing Act
             (FEHA) Must Be Dismissed On Multiple Grounds ..................................................... 22

          1.    The FEHA Claims Against Defendants De Anza And The District
                 Were Already Dismissed *Without Leave To Amend* ..................................... 22

          2.    To The Extent That Plaintiff Intends To Bring A FEHA Racial
                 Harassment Claim Against Defendants Holmes, Espinosa-Pieb, Hearn,
                 Ray And Cortez, Count 5 Fails To State A Claim ........................................ 22

ii

PLAZA DE JENNINGS & CHIPMAN LLP
ATTORNEYS AT LAW
ALAMEDA

1

3.  Failure To Exhaust ........................................................................ 23

IV. CONCLUSION ................................................................................................ 24

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAZA DE JENNINGS & CHIPMAN LLP
ATTORNEYS AT LAW
ALAMEDA

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Adams v. Johnson*, 355 F.3d 1179 (9th Cir. 2004) ........................................................ 3

5

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 455 (2007) ................................................ 3

6

*Brewster v. Bd. Of Educ. Of Lynwood Unified Sch. Dist.*, 149 F.3d 971 (9th Cir. 1998) ............... 18

7

*Capp v. Cnty of San Diego*, 940 F.3d 1046 (9th Cir. 2019) ........................................ 5

8

9

*Demers v. Austin*, 746 F.3d 402 (2014) ........................................................... 17

*Fayer v. Vaughn*, 649 F.3d 1061 (9th Cir. 2011) ................................................. 3

10

*Giles v. San Joaquin Valley Rehab. Hosp.*, 2023 U.S. Dist. LEXIS 121567 *13, 2023 WL

11

4551692 (E.D. Cal. July 14, 2023) .......................................................... 18

12

*Gordon v. Cnty of Orange*, 6 F.4th 961 (9th Cir. 2021) ........................................... 17

13

*Hafer v. Melo*, 502 U.S. 21 (1991) ................................................................ 16

14

15

*Harper v. City of L.A.*, 533 F.3d 1010 (9th Cir. 2008) .......................................... 4

16

*Hartmann v. California Dep't of Corr. & Rehab*, 707 F.3d 1114 (9th Cir. 2013) ................ 16

17

*Hashimoto v. Dalton*, 118 F.3d 671 (9th Cir. 1997) ............................................. 20

18

*Iqbal, supra*, 556 U.S. ............................................................................ 12

19

20

*Jones v. The Lodge at Torrey Pines P'ship*, 42 Cal.4th 1158 (2008) ............................. 22

21

*Jumaane v. City of Los Angeles*, 241 Cal. App. 4th 1390 (2015) ................................ 23

22

*Kim v. Konad USA Distrib., Inc.*, 226 Cal. App. 4th 1336 (2014) ............................... 23

23

*Leer v. Murphy*, 844 F.2d 628 (9th Cir. 1988) .................................................. 4

24

*Long v. Cnty. of L.A.*, 442 F.3d 1178 (9th Cir. 2006) .......................................... 4

25

26

*McGinest v. GTE Serv. Corp.*, 360 F.3d 1103 (9th Cir. 2004) ................................... 19

27

*Monell v. Dep't of Soc. Servs. of N.Y.*, 426 U.S. 658 (1978) .................................. 16

28

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) ................................... 21

PLAZA DE JENNINGS & CHIPMAN LLP
ATTORNEYS AT LAW
ALAMEDA

iv

*Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001) ................................................................ 3

*Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75 (1998) .................................... 19

*OSU Student All. v. Ray*, 699 F.3d 1053 (9th Cir. 2012) ................................................. 4

*Reno v. Baird*, 18 Cal.4th 640 (1998) .............................................................................. 22

*Sampson v. Cnty of Los Angeles*, 974 F.3d 1012 (9th Cir. 2020) ................................. 17

*Seider v. de Vries*, 39 F.4th 591 (9th Cir. 2022) ............................................................ 17

*Shaw v. Hahn*, 56 F.3d 1128 (9th Cir. 1995) .................................................................. 3

*Shurtleff v. City of Boston*, 596 U.S. 243 (2022) ........................................................... 15

*Shwarz v. United States*, 234 F.3d 428 (9th Cir. 2000) ................................................. 3

*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) ................................................................ 3

*Westendorf v. W. Coast Contractors of Nex., Inc.*, 712 F.3d 417 (9th Cir. 2013) .......... 20

*Williams v. Am. Airlines, Inc.*,

    2020 U.S. Dist. LEXIS 49949, at *14 (N.D. Cal. March 23, 2020) ......................... 23

**Statutes**

42 U.S.C. § 1983 ............................................................................................................... 5

42 U.S.C. § 1983 ........................................................................................................... 4, 16

42 U.S.C. § 2000e-2(a)(1) ............................................................................................... 20

California's Fair Employment & Housing Act, Cal. Gov't Code §§ 12940 *et seq* ...... 2, 25

Civil Rights Act of 1964 (42 U.S.C. § 2000-e) ............................................................... 2

**Constitution**

Eleventh Amendment ....................................................................................................... 21

First Amendment ............................................................................................................. 2

PLAZA DE JENNINGS & CHIPMAN LLP
ATTORNEYS AT LAW
ALAMEDA

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAZA DE JENNINGS & CHIPMAN LLP
ATTORNEYS AT LAW
ALAMEDA

**Court Rules**

Federal Rule of Civil Procedure 8(a)(2) .......................................................................... 3

Federal Rule of Civil Procedure 12(b)(6) ......................................................................... 3

## NOTICE OF MOTION AND MOTION

TO PLAINTIFF AND HER ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on October 3, 2024 at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 8 before the Hon. P. Casey Pitts of the above-referenced Court, located at 280 South 1st Street, San Jose, California, Defendants Foothill-De Anza Community College District (herein "District"),[1] De Anza Community College (herein "De Anza College"),[2] Lee Lambert (herein "Chancellor Lambert"),[3] Lloyd A. Holmes (herein "President Holmes"),[4] Patrick Ahrens (herein "Trustee Ahrens"), Laura Casas (herein "Trustee Casas"), Pearl Cheng (herein "Trustee Cheng"), Peter Landsberger (herein "Trustee Landsberger"), Gilbert Wong (herein "Trustee Wong"), Alicia Cortez (herein "Dean Cortez"), Thomas Ray (herein "Interim Associate Vice President for Instruction Ray" or "AVPI Ray"), Christina Espinosa-Pieb (herein "Vice President for Instruction Espinosa-Pieb" or "VPI Espinosa-Pieb") and Lydia Hearn (herein "Interim Associate Vice President for Instruction Hearn" or "AVPI Hearn") (collectively "Defendants") will and hereby do move this Court to dismiss Plaintiff's Second Amended Complaint (herein "Second Amended Complaint" or "SAC") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

This Motion is brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities, Plaintiff's Second Amended Complaint ("SAC"), any and all relevant papers filed in this case, and such other further oral and documentary evidence and memoranda that may be presented to this Court.

---

[1] The District is comprised of two colleges: De Anza College and Foothill College.

[2] De Anza College is part of the District, is not a separate public entity subject to suit, and therefore a redundant party that should be dismissed.

[3] Lee Lambert is Chancellor of the District and is sued in his official capacity only. Plaintiff added Chancellor Lambert as a Defendant in the SAC. Chancellor Lambert commenced employment with the District after Plaintiff initiated this lawsuit.

[4] Holmes is the former President of De Anza College as of the filing of the SAC.

1

PLAZA DE JENNINGS & CHIPMAN LLP
ATTORNEYS AT LAW
ALAMEDA

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTORY STATEMENT

Plaintiff Tabia Lee (herein "Plaintiff" or "Lee") filed a Second Amended Complaint (herein "SAC") on May 31, 2024.  The SAC was filed following the Court's May 7, 2024 Order On Motion To Dismiss (ECF No. 51, herein "May 7th Order"), which dismissed all seven Counts in Plaintiff's First Amended Complaint (herein "FAC") (ECF No. 27), three with leave to amend.[5]    The three Counts dismissed, with leave to amend as set forth with particularity in the Court's May 7th Order, were the following :  (1) First Amendment Free Speech (42 U.S.C. § 1983) (herein "First Amendment");  (2) Title VII of the Civil Rights Act of 1964 (42 U.S. C. § 2000-e) (herein "Title VII"); and (3) California's Fair Employment and Housing Act (Gov't Code § 12940 et seq.) (herein "FEHA").

The Court's May 7th Order was specific as to the central pleading deficiencies in Plaintiff's FAC regarding her First Amendment, Title VII, and FEHA claims, and what Plaintiff would be required to plead to cure those deficiencies in any amended complaint she chose to file. As addressed herein, instead of curing the deficiencies in the First Amended Complaint, Lee largely rehashes, in voluminous form, allegations that she included in each prior version of her complaint, and which this Court has dismissed as insufficient to state a claim.  To the extent her allegations are new to the Second Amended Complaint, they are largely conclusory statements and/or language-smithing, rather than plausibly alleged facts sufficient to state a claim.

Defendants District, De Anza College, Holmes, Lambert, Ahrens, Casas, Cheng, Wong, Cortez, Ray, Espinosa-Pieb, and Hearn (collectively "Defendants") now move under Rule 12(b)(6) to dismiss all claims under the First Amendment, Title VII, and FEHA (Counts 1 through 5) in Plaintiff's Second Amended Complaint on the grounds set forth herein.

---

[5] The Court dismissed the following Counts in the FAC without leave to amend:  Count 2 (Title VI); Count 3 (Cal. Const., Art. 1, Sec. 2(a)); Count 4 (Wrongful Termination – FEHA); and Count 5 (Wrongful Termination – Cal. Const., Art. 1, Sec. (8)).

2

PLAZA DE JENNINGS & CHIPMAN LLP
ATTORNEYS AT LAW
ALAMEDA

1    The Court should grant Defendants' Motion to Dismiss in its entirety and dismiss all five

2    Counts against all Defendants without leave to amend on the grounds set forth herein.

3    ## II.   LEGAL STANDARDS FOR MOTION TO DISMISS

4        Federal Rule of Civil Procedure section 12(b)(6) provides that a complaint (or a particular

5    claim for relief) may be dismissed at the outset for "failure to state a claim upon which relief can

6    be granted." Rule 12(b)(6) motions test "the legal sufficiency of the complaint." *Navarro v.*

7    *Block*, 250 F.3d 729, 732 (9th Cir. 2001). To survive a motion to dismiss, a complaint must

8    contain sufficient factual matter to "state a claim to relief that is plausible on its face." *c*, citing

9    *Bell Atlantic Corp. v. Twombly*, 550 U.S. 455, 570 (2007). On a motion to dismiss, the trial court

10   must accept the factual allegations of the complaint as true. *Iqbal*, *supra*, 556 U.S. at 678;

11   *Twombly*, *supra*, 550 U.S. at 570. However, this standard does not apply to conclusory

12   allegations or legal conclusions. "Threadbare recitals of the elements of a cause of action,

13   supported by mere conclusory statements, do not suffice." *Iqbal*, *supra*, 556 U.S. at 678.

14   Moreover, the court need not accept as true allegations contradicted by judicially noticeable facts,

15   *see Shwarz v. United States,* 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the

16   plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into

17   a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129, n.1 (9th Cir. 1995). Nor

18   must the Court "assume the truth of legal conclusions merely because they are cast in the form of

19   factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (*per curiam*). Mere

20   "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to

21   dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

22       Ascertaining whether the complaint is factually plausible is a "context-specific task that

23   requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, *supra*,

24   556 U.S. at 679. Moreover, the "well-pleaded facts" rule requires more than the mere possibility

25   of misconduct." *Ibid.* The complaint must "***show*** that the [plaintiff] is entitled to relief." *Ibid.*,

26   quoting Federal Rule of Civil Procedure 8(a)(2), emphasis supplied. *See Starr v. Baca*, 652 F.3d

27   1202, 1214-16 (9th Cir. 2011).

28

PLAZA DE JENNINGS & CHIPMAN LLP
ATTORNEYS AT LAW
ALAMEDA

1

## III.  ARGUMENT

2

**A.**  **Count 1 Must Be Dismissed Because Plaintiff Has Failed To Adequately Allege A First Amendment Free Speech Retaliation Claim For Damages Under 42 U.S.C. § 1983 Against Individual Defendants Holmes, Espinosa-Pieb, Ray, Hearn Or Cortez**

3

4

Count 1 is a claim for damages under 42 U.S.C. § 1983 ("Section 1983") brought against

5

Defendants Holmes, Espinosa-Pieb, Ray, Hearn and Cortez (herein collectively "Individual

6

Defendants") in their individual capacities for alleged retaliation against Lee in violation of the

7

First Amendment (Free Speech) (herein "First Amendment Retaliation Claim").  Plaintiff has

8

failed to adequately allege plausible facts of a First Amendment Retaliation claim for damages

9

against any individual Defendant sued in their individual capacity sufficient to cure the

10

deficiencies identified by the Court in granting leave to amend.

11

**1.**  **Legal Standard For Stating A First Amendment Retaliation Claim Under 42 U.S. C. § 1983 Against An Individual Defendant**

12

13

There are two elements to a Section 1983 claim:  (1) "that a right secured by the

14

Constitution…was violated, and (2) that the alleged violation was committed by a person acting

15

under the color of state law." ECF No. 51, 6:9-11, citing *Long v. Cnty. of L.A.*, 442 F.3d 1178,

16

1185 (9th Cir. 2006).  Additionally, a "plaintiff must also demonstrate that the defendant's

17

conduct was the actionable cause of the claimed injury" (i.e. causation-in-fact and proximate

18

causation).  ECF No. 51, 6:9-11, citing *Harper v. City of L.A.,* 533 F.3d 1010, 1026 (9th Cir.

19

2008).  In this regard, a Section 1983 claim does not support vicarious liability. *See OSU Student*

20

*All. v. Ray*, 699 F.3d 1053, 1069 (9th Cir. 2012) (citations omitted).  "[E]ach government official,

21

his or her title notwithstanding, is only liable for his or her own misconduct." *Id.*, citing *Ashcroft*

22

*v. Iqbal*, 556 U.S. 662, 667 (2009).  Therefore, "[t]o state a valid [Section] 1983 claim, 'a plaintiff

23

must plead that each government-official defendant, *through the official's own individual actions*,

24

had violated the Constitution." *Id.*  (emphasis added.)  A person deprives another of a

25

constitutional right under Section 1983 only "if he does an affirmative act, participates in

26

another's affirmative acts, or omits to perform an act that he is legally required to do." *Leer v.*

27

*Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (internal quotations omitted).  The inquiry into

28

causation "must be individualized and focus on the responsibilities of each individual defendant

4

PLAZA DE JENNINGS & CHIPMAN LLP
ATTORNEYS AT LAW
ALAMEDA

1  whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer, supra,*

2  844 F.2d at 633.

3      Additionally, to state a First Amendment Retaliation Claim a plaintiff must plausibly

4  allege that "(1) [plaintiff] was engaged in a constitutionally protected activity, (2) the defendant's

5  actions would chill a person of ordinary firmness from continuing to engage in the protected

6  activity, and (3) the protected activity was a substantial or motivating factor in the defendant's

7  conduct." ECF No. 51, 8:20-24 (internal quotations omitted), citing *Capp v. Cnty of San Diego,*

8  940 F.3d 1046, 1053 (9th Cir. 2019).  Moreover, the "plaintiff must show that the defendant's

9  retaliatory animus was a 'but-for' cause" of the plaintiff's injury "meaning that the adverse action

10  against the plaintiff would not have been taken absent the retaliatory motive." *Id.*

### 2. The Court's May 7th Order Specifying What Lee Must  Plausibly Allege In Any Amended Complaint To State A First Amendment Retaliation Claim[6] Against Any Of The Individual Defendants

13  The Court's May 7th Order dismissed, with leave to amend, Lee's individual capacity First

14  Amendment (Retaliation) claims against Defendants Holmes, Espinosa-Pieb, Ray, Hearn and

15  Cortez on the ground that they were impermissibly vague under Rule 8 and not clear enough to

16  enable each Defendant to respond because:

- the FAC did not specify which of the individual defendants Lee claimed retaliated against her and how;

- the FAC did not explain how each defendant's actions proximately caused her harm;

- not all of the speech discussed in the FAC was equally protected; and

- it was not entirely clear in the FAC which speech Lee asserts was the basis for each defendant's alleged retaliation, and whether that speech was academic speech or speech made pursuant to Lee's official duties.

25  ECF No. 51, 9:3-9.

26      Per the Court's May 7th Order, for Lee to adequately state a First Amendment claim

---

[6] As addressed below, Count 2 is a claim for First Amendment Censorship.  The Court's May 7th Order in this regard also applies to Count 2.

PLAZA DE JENNINGS & CHIPMAN LLP
ATTORNEYS AT LAW
ALAMEDA

5

PLAZA DE JENNINGS & CHIPMAN LLP
ATTORNEYS AT LAW
ALAMEDA

against an individual Defendant in any amended complaint, Lee must: "for each claim, identify the protected speech, how particular defendants violated her free expression rights with respect to that speech, and how defendants' actions caused her injuries." ECF No. 51, 9:9-12.  Regarding the particular speech at issue, in order to plead that particular speech is protected by the First Amendment, Lee "must *plausibly allege* that it was either (1) academic speech on a matter of public concern and thus potentially protected under *Demers*,[7] or (2) not made pursuant to her official responsibilities and thus potentially protected under *Garcetti*."[8]  (Emphasis added.) ECF No. 51, 7:8-12.  The Court noted Lee's official duties as the Faculty Director of the Office of Equity, Social Justice, & Multicultural Education (herein "Faculty Director") from portions of Lee's job description partially quoted by Plaintiff in the SAC.  Also noted was the fact that many of the statements that Lee discussed in her First Amended Complaint appeared to be speech that was made pursuant to Lee's official duties but that involved neither teaching nor academic writing.   ECF No. 51, 7:12-27.  The Court concluded that Lee had not adequately pleaded that the speech at issue was protected under either *Demers* or *Garcetti*, or that she was prevented from making any protected speech or retaliated against on the basis of such speech.  ECF No. 51, 7:12-13, 8:3-5.  In addition to the above pleading requirements regarding each individual Defendant, in any amended complaint: "Dr. Lee must identify the specific academic or non-official speech that she contends was censored or a basis for retaliation." ECF No. 51, 8:5-7.

### 3.    Plaintiff Has Not Adequately Pleaded That Her Alleged Speech At Issue In Count 1 Was Speech Protected By The First Amendment

To adequately state a First Amendment claim, Plaintiff was required by the May 7th Order to plausibly allege as a threshold element  that the speech she claims was protected by the First Amendment was either (1) academic speech on a matter of public concern and thus potentially

---

[7] *Demers v. Austin*, 746 F.3d 402, 412 (9th Cir. 2014) (holding that Garcetti does not apply to teaching and academic writing that are performed pursuant to the official duties of a teacher or professor).

[8] *Garcetti v. Ceballos*, 547 U.S. 410, 417, 421 (2006) (when public employees "make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline.")

6

## NOTICE OF MOTION AND MOTION

TO PLAINTIFF AND HER ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on October 3, 2024 at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 8 before the Hon. P. Casey Pitts of the above-referenced Court, located at 280 South 1st Street, San Jose, California, Defendants Foothill-De Anza Community College District (herein "District"),[1] De Anza Community College (herein "De Anza College"),[2] Lee Lambert (herein "Chancellor Lambert"),[3] Lloyd A. Holmes (herein "President Holmes"),[4] Patrick Ahrens (herein "Trustee Ahrens"), Laura Casas (herein "Trustee Casas"), Pearl Cheng (herein "Trustee Cheng"), Peter Landsberger (herein "Trustee Landsberger"), Gilbert Wong (herein "Trustee Wong"), Alicia Cortez (herein "Dean Cortez"), Thomas Ray (herein "Interim Associate Vice President for Instruction Ray" or "AVPI Ray"), Christina Espinosa-Pieb (herein "Vice President for Instruction Espinosa-Pieb" or "VPI Espinosa-Pieb") and Lydia Hearn (herein "Interim Associate Vice President for Instruction Hearn" or "AVPI Hearn") (collectively "Defendants") will and hereby do move this Court to dismiss Plaintiff's Second Amended Complaint (herein "Second Amended Complaint" or "SAC") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

This Motion is brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities, Plaintiff's Second Amended Complaint ("SAC"), any and all relevant papers filed in this case, and such other further oral and documentary evidence and memoranda that may be presented to this Court.

---

[1] The District is comprised of two colleges: De Anza College and Foothill College.
[2] De Anza College is part of the District, is not a separate public entity subject to suit, and therefore a redundant party that should be dismissed.
[3] Lee Lambert is Chancellor of the District and is sued in his official capacity only. Plaintiff added Chancellor Lambert as a Defendant in the SAC. Chancellor Lambert commenced employment with the District after Plaintiff initiated this lawsuit.
[4] Holmes is the former President of De Anza College as of the filing of the SAC.

PLAZA DE JENNINGS & CHIPMAN LLP
ATTORNEYS AT LAW
ALAMEDA

PLAZA DE JENNINGS & CHIPMAN LLP
ATTORNEYS AT LAW
ALAMEDA

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTORY STATEMENT

Plaintiff Tabia Lee (herein "Plaintiff" or "Lee") filed a Second Amended Complaint (herein "SAC") on May 31, 2024.  The SAC was filed following the Court's May 7, 2024 Order On Motion To Dismiss (ECF No. 51, herein "May 7th Order"), which dismissed all seven Counts in Plaintiff's First Amended Complaint (herein "FAC") (ECF No. 27), three with leave to amend.[5]   The three Counts dismissed, with leave to amend as set forth with particularity in the Court's May 7th Order, were the following :  (1) First Amendment Free Speech (42 U.S.C. § 1983) (herein "First Amendment");  (2) Title VII of the Civil Rights Act of 1964 (42 U.S. C. § 2000-e) (herein "Title VII"); and (3) California's Fair Employment and Housing Act (Gov't Code § 12940 et seq.) (herein "FEHA").

The Court's May 7th Order was specific as to the central pleading deficiencies in Plaintiff's FAC regarding her First Amendment, Title VII, and FEHA claims, and what Plaintiff would be required to plead to cure those deficiencies in any amended complaint she chose to file. As addressed herein, instead of curing the deficiencies in the First Amended Complaint, Lee largely rehashes, in voluminous form, allegations that she included in each prior version of her complaint, and which this Court has dismissed as insufficient to state a claim.  To the extent her allegations are new to the Second Amended Complaint, they are largely conclusory statements and/or language-smithing, rather than plausibly alleged facts sufficient to state a claim.

Defendants District, De Anza College, Holmes, Lambert, Ahrens, Casas, Cheng, Wong, Cortez, Ray, Espinosa-Pieb, and Hearn (collectively "Defendants") now move under Rule 12(b)(6) to dismiss all claims under the First Amendment, Title VII, and FEHA (Counts 1 through 5) in Plaintiff's Second Amended Complaint on the grounds set forth herein.

---

[5] The Court dismissed the following Counts in the FAC without leave to amend:  Count 2 (Title VI); Count 3 (Cal. Const., Art. 1, Sec. 2(a)); Count 4 (Wrongful Termination – FEHA); and Count 5 (Wrongful Termination – Cal. Const., Art. 1, Sec. (8)).

2

The Court should grant Defendants' Motion to Dismiss in its entirety and dismiss all five Counts against all Defendants without leave to amend on the grounds set forth herein.

## II.   LEGAL STANDARDS FOR MOTION TO DISMISS

Federal Rule of Civil Procedure section 12(b)(6) provides that a complaint (or a particular claim for relief) may be dismissed at the outset for "failure to state a claim upon which relief can be granted." Rule 12(b)(6) motions test "the legal sufficiency of the complaint." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *c*, citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 455, 570 (2007). On a motion to dismiss, the trial court must accept the factual allegations of the complaint as true. *Iqbal*, *supra*, 556 U.S. at 678; *Twombly*, *supra*, 550 U.S. at 570. However, this standard does not apply to conclusory allegations or legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, *supra*, 556 U.S. at 678. Moreover, the court need not accept as true allegations contradicted by judicially noticeable facts, *see Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129, n.1 (9th Cir. 1995). Nor must the Court "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (*per curiam*). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

Ascertaining whether the complaint is factually plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, *supra*, 556 U.S. at 679. Moreover, the "well-pleaded facts" rule requires more than the mere possibility of misconduct." *Ibid*. The complaint must "***show*** that the [plaintiff] is entitled to relief." *Ibid.*, quoting Federal Rule of Civil Procedure 8(a)(2), emphasis supplied. *See Starr v. Baca*, 652 F.3d 1202, 1214-16 (9th Cir. 2011).

PLAZA DE JENNINGS & CHIPMAN LLP
ATTORNEYS AT LAW
ALAMEDA

3

1

## III.  ARGUMENT

2

**A.  Count 1 Must Be Dismissed Because Plaintiff Has Failed To Adequately Allege A First Amendment Free Speech Retaliation Claim For Damages Under 42 U.S.C. § 1983 Against Individual Defendants Holmes, Espinosa-Pieb, Ray, Hearn Or Cortez**

3

4

Count 1 is a claim for damages under 42 U.S.C. § 1983 ("Section 1983") brought against

5

Defendants Holmes, Espinosa-Pieb, Ray, Hearn and Cortez (herein collectively "Individual

6

Defendants") in their individual capacities for alleged retaliation against Lee in violation of the

7

First Amendment (Free Speech) (herein "First Amendment Retaliation Claim").  Plaintiff has

8

failed to adequately allege plausible facts of a First Amendment Retaliation claim for damages

9

against any individual Defendant sued in their individual capacity sufficient to cure the

10

deficiencies identified by the Court in granting leave to amend.

11

**1.  Legal Standard For Stating A First Amendment Retaliation Claim Under 42 U.S. C. § 1983 Against An Individual Defendant**

12

13

There are two elements to a Section 1983 claim:  (1) "that a right secured by the

14

Constitution…was violated, and (2) that the alleged violation was committed by a person acting

15

under the color of state law." ECF No. 51, 6:9-11, citing *Long v. Cnty. of L.A.*, 442 F.3d 1178,

16

1185 (9th Cir. 2006).  Additionally, a "plaintiff must also demonstrate that the defendant's

17

conduct was the actionable cause of the claimed injury" (i.e. causation-in-fact and proximate

18

causation).  ECF No. 51, 6:9-11, citing *Harper v. City of L.A.,* 533 F.3d 1010, 1026 (9th Cir.

19

2008).  In this regard, a Section 1983 claim does not support vicarious liability.  *See OSU Student*

20

*All. v. Ray*, 699 F.3d 1053, 1069 (9th Cir. 2012) (citations omitted).  "[E]ach government official,

21

his or her title notwithstanding, is only liable for his or her own misconduct." *Id.*, citing *Ashcroft*

22

*v. Iqbal*, 556 U.S. 662, 667 (2009).  Therefore, "[t]o state a valid [Section] 1983 claim, 'a plaintiff

23

must plead that each government-official defendant, *through the official's own individual actions*,

24

had violated the Constitution." *Id.*  (emphasis added.)  A person deprives another of a

25

constitutional right under Section 1983 only "if he does an affirmative act, participates in

26

another's affirmative acts, or omits to perform an act that he is legally required to do." *Leer v.*

27

*Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (internal quotations omitted).  The inquiry into

28

causation "must be individualized and focus on the responsibilities of each individual defendant

PLAZA DE JENNINGS & CHIPMAN LLP
ATTORNEYS AT LAW
ALAMEDA

4

1  whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer, supra,*

2  844 F.2d at 633.

3      Additionally, to state a First Amendment Retaliation Claim a plaintiff must plausibly

4  allege that "(1) [plaintiff] was engaged in a constitutionally protected activity, (2) the defendant's

5  actions would chill a person of ordinary firmness from continuing to engage in the protected

6  activity, and (3) the protected activity was a substantial or motivating factor in the defendant's

7  conduct." ECF No. 51, 8:20-24 (internal quotations omitted), citing *Capp v. Cnty of San Diego,*

8  940 F.3d 1046, 1053 (9th Cir. 2019). Moreover, the "plaintiff must show that the defendant's

9  retaliatory animus was a 'but-for' cause" of the plaintiff's injury "meaning that the adverse action

10  against the plaintiff would not have been taken absent the retaliatory motive." *Id.*

11      **2.  The Court's May 7th Order Specifying What Lee Must  Plausibly Allege In
            Any Amended Complaint To State A First Amendment Retaliation Claim[6]**

12      **Against Any Of The Individual Defendants**

13      The Court's May 7th Order dismissed, with leave to amend, Lee's individual capacity First

14  Amendment (Retaliation) claims against Defendants Holmes, Espinosa-Pieb, Ray, Hearn and

15  Cortez on the ground that they were impermissibly vague under Rule 8 and not clear enough to

16  enable each Defendant to respond because:

17      • the FAC did not specify which of the individual defendants Lee claimed retaliated

18         against her and how;

19      • the FAC did not explain how each defendant's actions proximately caused her

20         harm;

21      • not all of the speech discussed in the FAC was equally protected; and

22      •  it was not entirely clear in the FAC which speech Lee asserts was the basis for

23         each defendant's alleged retaliation, and whether that speech was academic speech

24         or speech made pursuant to Lee's official duties.

25  ECF No. 51, 9:3-9.

26      Per the Court's May 7th Order, for Lee to adequately state a First Amendment claim

27  ───────────────────

28  [6] As addressed below, Count 2 is a claim for First Amendment Censorship. The Court's May 7th
    Order in this regard also applies to Count 2.

5

PLAZA DE JENNINGS & CHIPMAN LLP
ATTORNEYS AT LAW
ALAMEDA

against an individual Defendant in any amended complaint, Lee must: "for each claim, identify the protected speech, how particular defendants violated her free expression rights with respect to that speech, and how defendants' actions caused her injuries." ECF No. 51, 9:9-12.  Regarding the particular speech at issue, in order to plead that particular speech is protected by the First Amendment, Lee "must *plausibly allege* that it was either (1) academic speech on a matter of public concern and thus potentially protected under *Demers*,[7] or (2) not made pursuant to her official responsibilities and thus potentially protected under *Garcetti*."[8]  (Emphasis added.) ECF No. 51, 7:8-12.  The Court noted Lee's official duties as the Faculty Director of the Office of Equity, Social Justice, & Multicultural Education (herein "Faculty Director") from portions of Lee's job description partially quoted by Plaintiff in the SAC.  Also noted was the fact that many of the statements that Lee discussed in her First Amended Complaint appeared to be speech that was made pursuant to Lee's official duties but that involved neither teaching nor academic writing.   ECF No. 51, 7:12-27.  The Court concluded that Lee had not adequately pleaded that the speech at issue was protected under either *Demers* or *Garcetti*, or that she was prevented from making any protected speech or retaliated against on the basis of such speech.  ECF No. 51, 7:12-13, 8:3-5.  In addition to the above pleading requirements regarding each individual Defendant, in any amended complaint: "Dr. Lee must identify the specific academic or non-official speech that she contends was censored or a basis for retaliation."  ECF No. 51, 8:5-7.

### 3. Plaintiff Has Not Adequately Pleaded That Her Alleged Speech At Issue In Count 1 Was Speech Protected By The First Amendment

To adequately state a First Amendment claim, Plaintiff was required by the May 7th Order to plausibly allege as a threshold element  that the speech she claims was protected by the First Amendment was either (1) academic speech on a matter of public concern and thus potentially

---

[7] *Demers v. Austin*, 746 F.3d 402, 412 (9th Cir. 2014) (holding that Garcetti does not apply to teaching and academic writing that are performed pursuant to the official duties of a teacher or professor).

[8] *Garcetti v. Ceballos*, 547 U.S. 410, 417, 421 (2006) (when public employees "make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline.")

PLAZA DE JENNINGS & CHIPMAN LLP
ATTORNEYS AT LAW
ALAMEDA

1  protected under *Demers*, or (2) not made pursuant to her official responsibilities and thus

2  potentially protected under *Garcetti*. ECF No. 51, 7:8-12.  Additionally, she was also required to

3  identify the specific academic or non-official speech that she contends was the basis for

4  retaliation. ECF No. 51, 8:5-7.  Count 1 does not meet this pleading threshold for protected

5  speech.

6        Plaintiff was a Faculty Director, a resource faculty position.  She was not a "professor" or

7  a classroom teacher as she now claims in an attempt to elevate the speech at issue in her SAC to

8  "academic speech" under *Demers*.  As the May 7th Order noted, Lee's formal job responsibilities

9  as Faculty Director, according to her job description, included:  "facilitating an institution-wide

10  transformation that realizes and promotes our commitment to equity, social justice, and

11  multicultural education for students, classified professionals, faculty and administrators";

12  "supporting the college's equity plan by working collaboratively with and mentoring teachers and

13  non-teaching faculty and classified professionals in culturally responsive and transformative

14  curriculum and pedagogy;" "making 'report outs' to the Academic Senate;" and "designing

15  instructional workshops and programs." ECF No. 51, 7:1-20.  See Request for Judicial Notice

16  (herein "RJN"), Exhibit 1 to Declaration of Jayne Chipman (herein "Decl. of Chipman").  Within

17  this context of her Faculty Director role, the Court further noted that many of the statements that

18  Lee discussed in her First Amended Complaint appeared to be speech that was made "pursuant to

19  [her] official duties but that involved neither teaching nor academic writing:"  statements at team

20  meeting, email to Office of Research, unspecified "objection" to land acknowledgement, "report-

21  out" to Academic Senate.  ECF No. 51, 7:12-13, 8:3-5.  Lee's duties as Faculty Director and her

22  job description have not changed between the First and Second Amended Complaints.  Her job

23  title during her employment did not include "College Professor" and her role within the College

24  was as a mentor to "teaching and non-teaching faculty and classified professionals" and not as an

25  instructional "teaching" faculty member as she now incorrectly attempts to imply through her

26  assertions in the SAC.  *See e.g.* SAC ¶¶ 30, 31, 45, 46, 69, 130, 195, 259.  Moreover, simply

27  labeling the same set of speech and activities alleged in the FAC which the Court stated appeared

28  to be "speech that was made as part of Lee's official duties but that involved neither teaching nor

PLAZA DE JENNINGS & CHIPMAN LLP
ATTORNEYS AT LAW
ALAMEDA

7

PLAZA DE JENNINGS & CHIPMAN LLP
ATTORNEYS AT LAW
ALAMEDA

academic writing," as now "related to matters of pedagogy, scholarship, and/or matters of public concern" does not meet the threshold to plausibly allege that such speech performed as part of Lee's job duties was protected speech under the First Amendment.  See e.g. SAC ¶¶ 239-241 (Count 1).

Count 1 lists 8 items of speech that Plaintiff asserts was "constitutionally protected speech," but she does not specify the basis for the constitutional protection (academic speech on a matter of public concern or speech not made pursuant to her official duties) as required.  Count 1 simply alleges that all writings and speech "on these subject matters" (referring to SAC, ¶ 204) were "related to pedagogy, scholarship, and/or matters of public concern."  SAC, ¶ 241.  However, sifting through the SAC for factual examples of each of the 8 items of alleged constitutionally protected speech, it is apparent that the 8 items are simply many of the same alleged instances of speech that the Court previously found were insufficient to allege First Amendment protection, now "dressed up" with insertion of the words "pedagogy," "teaching," and "scholarship":

- <u>Reports to public sessions of the Academic Senate</u>:  There are two instances specified in the SAC where Lee alleges she spoke to the Academic Senate.  The first is Lee's November 29, 2021 "report out" to the Academic Senate, which she now asserts (incorrectly) "directly addressed pedagogy" and not personal complaints or minutiae of any particular individual's role.  SAC, ¶¶ 34, 100-108.  Lee's "report out" speech was later circulated by Lee on December 1, 2021 as part of her Faculty Director quarterly newsletter. SAC, ¶ 105.  SAC, ¶¶ 162-165.  Lee's November 21, 2021 "report out" demonstrates that it was simply a report by the Faculty Director at the end of the Fall quarter of her own experiences in her role as Faculty Director and her frustration with the role's limitations ("I do not supervise or direct anyone but myself, I do not set policy, I truly don't even really lead or act without the guidance of my Dean, tenure committee, and senior leadership; noting that if I step out of their gaze or wishes, … I may swiftly no longer be serving in this role.").  RJN, Exhibit 2 to Decl. of Chipman.  The "report out"

was not an effort to directly address pedagogy at De Anza or make broad proposals of directional change as asserted by Lee. SAC, ¶ 106. The second is Lee's unspecified "speaking out" in Spring 2022 to the Academic Senate on the proposal to give "affinity groups" "special voting rights in the Academic Senate" as part of her "work with shared governance groups" and job duty to "'facilitate inclusive processes.'" These examples are insufficient to allege protected academic speech.

- Emails and newsletters to all De Anza faculty and administrators: This example seems to be comprised of the December 1, 2021 Newsletter addressed immediately above that included text of Lee's "report out" to the Academic Senate. It is insufficient to demonstrate protected academic speech.

- Criticism of Defendants' practice and policy of intentionally misspelling foreign words like "Latino": This category is comprised of a mid-November email exchange with the Supervisor of Institutional Planning and Research, Mallory Newell. RJN, Exhibit 3 to Decl. of Chipman. The SAC characterizes this email exchange as Lee "speaking out" on "a matter of public concern and pedagogy." However, despite this characterization, the email exchange only included three people (including Lee) and the email exchange document demonstrates that it was initiated by Lee only to "seek more information about the use of certain social category names" such as the use of "Latinx" and "Filipinx" at the College. SAC, ¶¶ 87-91. It is likewise insufficient to demonstrate that Lee was engaged in protected academic speech.

- Opposition to illegally segregated "affinity groups" and "safe spaces": This example is comprised of Lee's discussion with colleagues, including Adriana Garcia, Tony Santa Ana, and Francesca Caparas at the October 4, 2021 Office of Equity team meeting that Lee alleges was part of her job duties. SAC, ¶¶ 70-84. This is an example that Lee has used before. Lee now claims, implausibly, in the SAC that "these meetings convened to address substantial changes to pedagogy at De Anza," without any facts to back up this

9

PLAZA DE JENNINGS & CHIPMAN LLP
ATTORNEYS AT LAW
ALAMEDA

PLAZA DE JENNINGS & CHIPMAN LLP
ATTORNEYS AT LAW
ALAMEDA

1   conclusory statement.  SAC, ¶ 72.  As addressed above, Lee also allegedly spoke to the

2   Academic Senate in Spring 2022 (addressed above) on the topic of affinity groups and

3   Academic Senate "voting rights," again as part of her job duties.  SAC, ¶ 165.  These

4   examples are insufficient to allege protected academic speech.

5

6   • Criticism of Defendants' "land acknowledgement":  Lee alleges that she objected to the

7   Office of Equity's Land Acknowledgement SAC ¶¶ 92-98.  In this regard, Lee now

8   alleges that she objected as a "faculty member addressing issues of public concern that

9   directly had impact on pedagogy at the community college."  No specific facts are

10  provided such as the date, manner or audience are provided in the SAC.  This is likewise

11  insufficient to allege protected academic speech.

12  • Criticism of Black Lives Matter and leading students in posing benign questions to its

13  founder Ms. Garza:  Lee moderated a public event with "Black Lives Matter author Alicia

14  Garza" at the College (held via Zoom) on October 8, 2021.  Lee has added in the SAC that

15  her moderating this event, which also involved students, was a "teaching and pedagogical

16  activity."  Lee worked with students on questions to ask Ms. Garza.  However, Garza's

17  book agent insisted that Dr. Lee restrict questions to Garza to those from a list of scripted

18  questions.  Nonetheless, Lee prompted students at the public event to ask Ms. Garza their

19  own follow up questions, prompting Ms. Garza to turn off her video camera.  Lee alleges

20  that she was trying to "optimize the educational value for students" participating in the

21  workshop by prompting them to ask their own questions.  SAC, ¶¶ 52-58.  Lee's

22  moderating the event and working with students is not protected academic speech.

23  • Opposition to prevalent anti-Semitism on the District campuses and advocacy of Jewish

24  heritage events:  Lee complained to Dean Cortez about anti-Semitism on campus, and

25  held a "Jewish Inclusion Summit" (February 24, 2022) as part of her work "teaching on

26  campus" as Faculty Director.  She also objected to Cortez about Adriana Garcia (Office

27  Of Equity Administrative Assistant) allegedly posting resources about anti-Zionism

28

10

PLAZA DE JENNINGS & CHIPMAN LLP
ATTORNEYS AT LAW
ALAMEDA

during a January 26, 2022 Hillel presentation to the Equity Action Council in a chat. Lee

viewed Garcia's action as "disrespectful." Lee further raised concerns with Dean Cortez

that De Anza should recognize International Holocaust Remembrance Day and Jewish

Heritage Month. SAC, ¶¶ 125-127, 130-139. Again, these allegations do not amount to

protected academic speech.

- Criticism of "third-wave anti-racism," including but not limited to her publication on this
  topic in the Journal of Free Black Thought: Lee criticized (unspecified) "third wave
  antiracism" (which she opposes) "in her scholarship" and in "teaching" at De Anza
  (unspecified). On February 28, 2023,[9] she published on the topic in the Journal of Free
  Black Thought (an online journal and community of heterodox scholars and public
  intellectuals). She also published a workshop module in Free Black Thought on January
  17, 2023. SAC, ¶¶ 45-46, 143.

With the possible exception of Lee's publishing in the Journal of Free Black Thought, she

has failed to adequately plead that her statements/actions set forth in Count 1 (SAC, ¶ 240) were

constitutionally protected speech, as opposed to speech that involved Lee's official duties but

involved neither teaching nor academic writing. All alleged "speech" activities in Count 1, with

the possible exception of publishing in Free Black Thought, were part of Lee's official duties as

Faculty Director and, despite being labeled in the SAC as "teaching," or related to scholarship or

pedagogy, the alleged facts or those subject to Judicial Notice, point to the conclusion that the

speech was not protected academic speech under *Demers*. Therefore, Count 1 should be

dismissed because she has failed to plausibly plead that she "engaged in constitutionally protected

activity" as required to state a First Amendment Retaliation claim.

### 4. Plaintiff Has Not Identified As Required For Each Defendant How The Defendant Violated Any Of Her Protected Speech Or How The Defendant's Alleged Violation Caused Her Injury

To adequately state a claim for damages against each individual Defendant in their

---

[9] This was after her Tenure Review Committee (Phase II) decided on February 10, 2023 that
Lee's contract employment should not be renewed for the following Academic Year.

11

1    individual capacity Plaintiff was required "for each claim, [to] identify the protected speech, how

2    particular defendants violated her free expression rights with respect to that speech, and how

3    defendants' actions caused her injury." ECF No. 51, 9:9-12. As addressed immediately above,

4    Plaintiff has not adequately pleaded that she engaged in "protected speech" (with the possible

5    exception of her publishing in Free Black Thought). In this regard, one of Plaintiff's publications

6    in Free Black Thought was not "published" until February 28, 2023, after Lee had been notified

7    by Chancellor Judy Miner on February 23, 2023 that she would recommend to the Board that

8    Lee's employment as a contract faculty member not be renewed for the 2023-2024 Academic

9    Year. SAC, ¶ 45 ("This included a publication in the Journal of Free Black Thought, published

10   February 28, 2023, in the midst of her tenure evaluation"). RJN, Exhibit 4 to Decl. of Chipman.

11          In addition, Count 1 still fails to specify for each individual Defendant how the particular

12   Defendant violated Lee's alleged free speech rights with respect to any particular speech, or how

13   the Defendant's alleged actions were the "but for" cause of any constitutional violation resulting

14   in the primary harm Plaintiff is claiming – her termination. Indeed, while Count 1 does purport to

15   list "retaliatory actions" by each individual Defendant, Count 1 fails entirely to identify for any

16   Defendant the specific allegedly protected speech, and how the particular Defendant violated her

17   free expression rights to that speech as required (i.e. no link). ECF No. 51, 9:9-12. Rather, for

18   each individual Defendant, Count 1 simply lists alleged "actions" by the Defendant in conclusory

19   statements (without dates or factual details) that are often phrased as conclusory legal assertions

20   not entitled to a presumption of truth under *Iqbal/Twombly*. *Iqbal*, *supra*, 556 U.S. at 678.

21   Moreover, Plaintiff's rote incorporation of the 236 Paragraphs that precede Count 1, irrespective

22   of their topic or relationship to any individual Defendant, does not provide the requisite fair

23   notice required under Rule 8(a)(2) for each Defendant's direct, personal responsibility for the

24   harm that Plaintiff primarily alleges (her termination) supposedly resulting from the particular

25   Defendant's retaliation for exercising free speech rights.

26          Regarding President Holmes, the three alleged "actions" are conclusory and fail to

27   plausibly plead sufficient facts of "how" President Holmes violated her constitutional rights or

28   link his alleged actions to any particular protected speech. The conclusory statements:

PLAZA DE JENNINGS & CHIPMAN LLP
ATTORNEYS AT LAW
ALAMEDA

12

1   participation in Lee's termination "with full knowledge that her termination was in retaliation for

2   her protected academic speech;" "refused to act on, and even condoned, behaviors complained

3   about in Lee's grievances submitted through the District's formal channels;" and "presided over

4   her termination through a pretextual tenure and promotion review process in which she was

5   expressly condemned for her viewpoints," are simply insufficient under *Iqbal/Twombly*.  Plaintiff

6   also fails to allege plausible facts of how President Holmes' actions were the "but for" cause of

7   any constitutional harm to Plaintiff for which Holmes could be liable for damages.  SAC, ¶ 247.

8           Regarding Vice President Espinosa-Pieb, the two alleged retaliatory "actions" are:

9   "Directed the De Anza communications team to remove all promotion of Dr. Lee's workshops

10  from the College's events calendar;" and "Delisted Dr. Lee's events and workshops from

11  eligibility for professional development credits."  SAC, ¶ 248.  Plaintiff fails to allege plausible

12  facts of how Vice President Espinosa-Pieb's actions were the "but for" cause of any constitutional

13  harm to Plaintiff, or link them to any specific protected speech of Plaintiff.  Vice President

14  Espinosa-Pieb had no involvement in Plaintiff's tenure review process leading to her nonrenewal.

15  Moreover, as noted by the Court, the College's decision to decline to promote, endorse, or

16  circulate Lee's speech would not be a constitutional violation.  ECF, 51 No. 8:13-19.

17          Regarding AVPI Ray, the five alleged retaliatory actions are:  Lee was terminated with

18  Ray's "direct help"; "Directed the De Anza communications team to remove all promotion of Dr.

19  Lee's workshops from the College's events calendar;" "Delisted Dr. Lee's events and workshops

20  from eligibility for professional development credits;" directed "others" not to work with Dr. Lee;

21  and participated in the decision to terminate Lee.  SAC, ¶¶ 243-244.  Plaintiff fails to allege

22  plausible facts of how AVPI Ray's actions were the "but for" cause of any constitutional harm to

23  Plaintiff, or link them to any specific protected speech of Plaintiff.  This includes AVPI Ray's

24  participation on Lee's Phase II Tenure Review Committee governed by the collectively bargained

25  tenure review procedures and the California Education Code.  Moreover, similar to Espinosa-

26  Pieb, as noted by the Court, the College's declining to promote, endorse, or circulate Lee's speech

27  would not be a constitutional violation.  ECF, 51 No. 8:13-19.

28          Regarding AVPI Hearn, who was only on Plaintiff's Tenure Review Committee during

PLAZA DE JENNINGS & CHIPMAN LLP
ATTORNEYS AT LAW
ALAMEDA

1    Phase I, the two alleged retaliatory acts are as follows: submitted a "retaliatory evaluation as part

2    of Dr. Lee's tenure review process" which allegedly cited "Dr. Lee's expression of controversial

3    (unspecified) viewpoints" as the reason for the negative evaluation.  Ultimately participated in the

4    decision to terminate Lee.  Plaintiff fails to allege plausible facts of how AVPI Hearn's actions

5    were the "but for" cause of any constitutional harm to Plaintiff, or link them to any specific

6    protected speech of Plaintiff.  With respect to the "but for" cause element, all of Hearn's

7    participation on the Tenure Review Committee occurred in Phase I, following which Lee was

8    moved on to Phase II.  As such, even assuming for the sake of argument that Hearn gave Lee a

9    "negative" evaluation, there is a lack of "but for" causation with respect to Lee's nonrenewal as

10   Hearn exited the process a year before the actual non-renewal decision.  SAC, ¶¶245-246.

11           Regarding Dean Cortez, the seven alleged retaliatory actions are: ordered removal of

12   events from the College calendar; "De-listed" Lee's events and workshops for eligibility for

13   professional development credit; Declared that Lee was no longer department chair when she was

14   listed on the [Academic Senate's] website; Directed others not to work with Lee; Instituted new

15   and onerous procedures for the approval of Dr. Lee's workshops; "Excluded" Lee from

16   participation in the Equity Action Council; and "Ultimately participated in the decision to

17   terminate Dr. Lee in retaliation for her protected activity."  ¶ 242.  Plaintiff fails to allege

18   plausible facts of how Dean Cortez's actions were the "but for" cause of any constitutional harm

19   to Plaintiff, or link them to any specific protected speech of Plaintiff.  This includes Dean

20   Cortez's participation on Lee's Phase I and II Tenure Review Committee governed by the

21   collectively bargained tenure review procedures and the California Education Code.  Moreover,

22   similar to Espinosa-Pieb and Ray, as noted by the Court, the College declining to promote,

23   endorse, or circulate Lee's speech would not be a constitutional violation.  ECF, 51 No. 8:13-19.

24           Plaintiff's failure to allege "individual" and "specific" plausible facts linking the alleged

25   actions of each individual Defendant with an intent to retaliate against Plaintiff for any of her

26   alleged constitutionally protected speech resulting in constitutional harm requires dismissal of

27   Count 1 against each Defendant sued in their individual capacity for damages.  Plaintiff has not

28   cured these pleading deficiencies following specific instructions from the Court about what was

PLAZA DE JENNINGS & CHIPMAN LLP
ATTORNEYS AT LAW
ALAMEDA

14

1   necessary to plead a cause of action.  At this juncture, Count 1 should be dismissed against each

2   individual Defendant without leave to amend.

3   **B.** **Count 2 Must Be Dismissed Because Plaintiff Has Failed To Adequately Allege A**
       **First Amendment Free Speech Censorship Claim For Damages Under 42 U.S.C. §**

4       **1983 Against Holmes, Espinosa-Pieb, Ray, Hearn Or Cortez**

5           Count 2 is a claim for damages under Section 1983 against the Individual Defendants in

6   their individual capacities for alleged censorship of Plaintiff's First Amendment right to freedom

7   of speech.  In its May 7th Order, the Court dismissed Lee's censorship claims in the FAC (with

8   leave to amend) on the ground that Plaintiff had not sufficiently alleged that she had been

9   prevented from making any protected speech.  ECF No. 51, 8:8-19.  In so ruling, the Court

10  reviewed Plaintiff's alleged acts of "censorship" in the FAC:  the College "erased" her from its

11  website (FAC ¶ 38); declined to endorse Lee's presentations and pedagogical materials as

12  "official activities" (FAC ¶ 116); removed Lee's events from the "College Events Calendar';"

13  "delisted" Dr. Lee's events as available for continuing education credit for faculty; and prevented

14  Lee from publishing on the Office of Equity's webpage.  EFC No. 51, 8:8-13.  The Court noted

15  that "[t]he First Amendment does not prevent the government from declining to express a view"

16  (citing *Shurtleff v. City of Boston*, 596 U.S. 243, 251 (2022)).  The Court concluded that

17  "censorship" allegations as pleaded in the FAC:  "do not suggest any ways in which the College

18  or any of the individual defendants prevented her from speaking or imposed any sort of prior

19  restraint.  Instead, the existing allegations suggest instances where the College declined to

20  promote, endorse, or circulate Dr. Lee's speech.  ECF No. 51, 8:17-19.

21          Count 2 is so convoluted that it is unclear exactly what Plaintiff's claim of censorship is.

22  Plaintiff appears to claim that workshop materials titled "The Race and Racial Equity What's It to

23  You?" that Plaintiff created as part of her Faculty Director job duties are academic writing

24  because they were published in January 2023.  However, months before they were published, she

25  "sought to present" these materials at De Anza beginning in October 2022. SAC, ¶ 253.  Yet, she

26  was somehow not able to present the workshop at De Anza because the College's

27  communications team elected not to "promote" Plaintiff's "workshops" and "de-listed" Plaintiff's

28

PLAZA DE JENNINGS & CHIPMAN LLP
ATTORNEYS AT LAW
ALAMEDA

15

workshops from eligibility for faculty professional development credits.  SAC, ¶¶ 252-254.  This makes no sense, particularly in light of the Court's May 7th Order which declined to draw the conclusion that the College's lawful decision not to promote, endorse or circulate Plaintiff's speech equated to a prior restraint or otherwise prevented Plaintiff from speaking on any matter. Additionally, Plaintiff also seems to assert in Count 2, without any plausibly alleged facts or common sense, that because Plaintiff's two year tenure review process concluded before her article was published in the Journal of Free Black Thought on February 28, 2023, the non-renewal decision was somehow a decision to "prevent the spread of such impermissible thoughts." However, Plaintiff's employment with the District did not end until June 30, 2023 – four months after the publication of her article.  Therefore, she was not in any way prohibited from speaking about her thoughts as Faculty Director after her notification of her non-renewal.  SAC, ¶ 235. Count 2 must therefore be dismissed against all Defendants (individual or official capacity) without leave to amend.

**C.    Counts 1 And 2  Fail To State A Claim For Prospective Injunctive Relief Against Defendants Sued In Their Official Capacities**

Counts 1 and 2 seeks a form of prospective injunctive relief -- Plaintiff's reinstatement to her job.  SAC ¶¶ 250, 264.  Official-capacity suits filed against state officials are merely an alternative way of pleading an action against the entity of which the defendant is an officer. *Hafer v. Melo*, 502 U.S. 21, 25 (1991).  To bring such a claim, Plaintiff must identify a policy or custom of the governmental entity of which the official is an agent that was the moving force behind the violation of Plaintiff's constitutional rights.  *Hafer*, 502 U.S. at 25; *Monell v. Dep't of Soc. Servs. of N.Y.*, 426 U.S. 658, 690 (1978).  Moreover, only the officials who have the authority to execute and/or ensure execution of the type of court-ordered prospective injunctive relief are proper defendants. *Hartmann v. California Dep't of Corr. & Rehab*, 707 F.3d 1114, 1127 (9th Cir. 2013).

Neither Count 1 nor Count 2 contain any allegation of the requisite policy or custom of the District that was the moving force behind her alleged constitutional injury, as is required to state a claim.  While both Counts, by rote, incorporate the foregoing voluminous Paragraphs in

16

PLAZA DE JENNINGS & CHIPMAN LLP
ATTORNEYS AT LAW
ALAMEDA

1    the SAC on a wide variety of topics, such an approach does not provide the requisite fair notice to

2    Defendants under Rule 8(a)(2) of what Plaintiff is claiming to sufficiently enable the individual

3    Defendants sued in their official capacities to defend themselves.  For this reason, both Counts

4    should therefore be dismissed against all Defendants sued in their official capacities.

5          To the extent that the Court permits Plaintiff leave to amend Count 1, she must only name

6    the Defendant official within the District who can appropriately respond to the type of

7    prospective injunctive relief sought (reinstatement).  *Hartmann*, supra, 707 at 1127.  Plaintiff has

8    named each individual Trustee in their official capacity.  However, the District's Board is a

9    legislative body subject to the Brown Act Open Meeting laws, Cal. Gov't Code § 54950 *et seq.*,

10   and can only act as a quorum collectively.  No individual Trustee has any authority individually

11   to order reinstatement of a former District employee.  Moreover, Christina Espinosa-Pieb is only

12   acting temporarily in the De Anza President's position.

### D. Each Individual Employee Defendant Sued In Their *Individual Capacity* Should Be Dismissed With Prejudice From Plaintiff's Section 1983 Claims (Counts 1 and 2) Due To Qualified Immunity

15         "Qualified immunity" 'protects all but the plainly incompetent or those who knowingly

16   violate the law.'"  *Gordon v. Cnty of Orange*, 6 F.4th 961, 968 (9th Cir. 2021).  Qualified

17   immunity in Section 1983 actions "protects government officials from liability for civil damages

18   insofar as their conduct does not violate clearly established statutory or constitutional rights of

19   which a reasonable person would have known."  *Sampson v. Cnty of Los Angeles*, 974 F.3d 1012,

20   1018 (9th Cir. 2020) (internal quotation marks and citations omitted). In deciding whether

21   qualified immunity applies, courts ask two questions:  did the official violate a constitutional

22   right, and (2) was that right clearly established at the time of the events at issue?  *Seider v. de*

23   *Vries*, 39 F.4th 591, 595 (9th Cir. 2022).  Either question can be addressed first and if the answer to

24   either is "no," then the state actor cannot be held liable for damages.  *Gordon*, *supra*, 6 F.4th at

25   1018.

26         In the Ninth Circuit, the *Pickering* balancing test is applied to "academic speech."

27   *Demers v. Austin*, 746 F.3d 402 (2014) (declining to apply *Garcetti* [547 U.S.  410 (2006)] to

28

17

PLAZA DE JENNINGS & CHIPMAN LLP
ATTORNEYS AT LAW
ALAMEDA

1    teaching and academic writing and instead applying *Pickering* balancing test [391 U.S. 563

2    (1968)].)   As noted by the Ninth Circuit, ""[t]he Pickering balancing process in cases involving

3    academic speech is likely to be particularly subtle and 'difficult'."  Moreover, "[t]he nature and

4    strength of the interest of an employing academic institution will also be difficult to assess.

5    Possible variations are almost infinite."  *Id.* at 413.  Also, "the evaluation of a professor's writing

6    for purposes of tenure or promotion involves a judgment by the employing university about the

7    quality of what he or she has written."  *Id.* at 413.  "[W]e should hesitate before concluding that

8    we know better than the institution itself the nature and strength of its legitimate interests."  *Id.* at

9    413.  In the Ninth Circuit, "[a]s the Pickering analysis 'requires a fact-sensitive, context-specific

10   balancing of competing interests, the law regarding public-employee free speech claims will

11   'rarely, if ever, be sufficiently clearly established to preclude immunity.'"  *Brewster v. Bd. Of*

12   *Educ. Of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 980 (9th Cir. 1998).

13           Counts 1 and 2 are premised on the assertion that all "speech" Plaintiff has engaged in as a

14   faculty member is protected under the First Amendment as "academic speech" under *Demers*, and

15   thus the *Pickering* balancing would apply to determine if her First Amendment rights were

16   violated.  However, due to the convoluted and often vague nature of Plaintiff's SAC pleading, all

17   instances of "protected speech" for which she is claiming retaliation or censorship by any

18   individual employee Defendant is not sufficiently delineated to meet the requirements of

19   *Iqbal/Twombly*.  Moreover, in the context of the statutory and collectively bargained tenure

20   review process that was ongoing and followed for Plaintiff during her two years of employment,

21   as well as the context of Plaintiff's job duties as Faculty Director, the law was not sufficiently

22   clearly established to place Holmes, Espinosa-Pieb, Ray, Hearn or Cortez on notice that any of

23   their actions (as alleged in the SAC) toward Plaintiff violated the First Amendment such that they

24   should be liable for damages.  Moreover, as noted in *Demers*, evaluating a professor for purposes

25   of tenure review involves judgement about the quality of the work. Therefore, the Section 1983

26   claims for damages should be dismissed against each individual Defendant on qualified immunity

27   grounds.

28

NOTICE, MOTION, MPA ISO DEFENDANTS' FRCP RULE 12(B)(6) MOTION
CASE NO. 5:23-CV-03418-PCP

PLAZA DE JENNINGS & CHIPMAN LLP
ATTORNEYS AT LAW
ALAMEDA

**E.** **Count 3 For Hostile Work Environment In Violation Of Title VII Should Be Dismissed For Failure To State A Claim**

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to [their] compensation, terms, conditions, or privileges of employment, because of such individual's race ... ." 42 U.S.C. § 2000e-2(a)(1).  A plaintiff may show race discrimination in violation of Title VII by proving disparate treatment (or impact), or by establishing the existence of a hostile work environment.  "An individual suffers disparate treatment in his employment 'when he or she is singled out and treated less favorably than others similarly situated.'"  *Giles v. San Joaquin Valley Rehab. Hosp.*, 2023 U.S. Dist. LEXIS 121567 *13, 2023 WL 4551692 (E.D. Cal. July 14, 2023).

Title VII may also be violated "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment."  To state a hostile work environment claim based on race, a plaintiff must sufficiently allege "(1) that [she] was subjected to verbal or physical conduct of a racial ... nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the terms and conditions of the plaintiff's employment or create an abusive work environment."  *Giles*, *supra*, 2023 U.S. Dist. LEXIS 121567 *15-16.  Under Title VII, a plaintiff must have been subject to "*discriminatory* intimidation, ridicule, and insult." *Giles*, *supra*, 2023 U.S. Dist. LEXIS 121567 *16, citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998).   The offensiveness of race-based harassment is judged from the perspective of a reasonable person of the same racial or ethnic group as the plaintiff. *McGinest v. GTE Serv. Corp.,* 360 F.3d 1103 (9th Cir. 2004).

In the May 7th Order, the Court dismissed plaintiff's Title VII hostile work environment (race) claim on the ground that as pleaded, and "considered in the context of an academic workplace in which discussing topics related to race appears to have been central to Dr. Lee's jobs and responsibilities," the conduct alleged – one comment directed at Lee ("whitesplaining"), one comment discussing race generally but not directed at Lee, and a presentation discussing race generally – did not "appear severe or pervasive enough to have interfered with Dr. Lee's

PLAZA DE JENNINGS & CHIPMAN LLP
ATTORNEYS AT LAW
ALAMEDA

1   performance of her job or otherwise alter the conditions of her employment. ECF No. 51, 15:23-

2   28. The Court further noted that while Lee may have disagreed with ideas presented, "showing a

3   hostile work environment requires more than disagreement or academic discussion of offensive

4   ideas." Lee was required in any amended complaint to identify the specific "conduct, she

5   contends created a hostile work environment and explain why that conduct, when considered in

6   the specific academic context of her position, was sufficiently severe and pervasive to violate

7   Title VII." ECF No. 51, 16:1-7.

8        While Count 3 has been expanded in the SAC, there is no explanation proffered as to why

9   the specific conduct, "when considered in the specific academic context of her position," was

10  sufficiently severe and pervasive enough to violate Title VII as required by the Court's granting

11  of leave to amend. The amendments in the SAC are related solely to alleged racial ideologies

12  (e.g. "decentering whiteness"), objection to "affinity groups" and "safe spaces," and other "social

13  justice" initiatives with which Lee in her own point of view considers "offensive," "hostile," and

14  "peddling" racism. In response to the Court's noting that the FAC included the allegation that

15  Lee herself, "recognizes that even obnoxious ideas may form part of diverse discussions of ideas

16  on campus," that allegation has been deleted from the SAC. Moreover, these are the same

17  arguments and examples recycled by Lee from her Free Speech allegations and now cast as racial

18  harassment. Count 3 also references again the allegation, already debunked in the prior Motion to

19  Dismiss, that Chancellor Minor made "decentering whiteness the official policy of the District."

20  RJN, Exhibit 5 to Decl. of Chipman. However, nowhere does Plaintiff do what the Court asked

21  her to do -- explain, in the context of her Faculty Director of the Office of Equity position, why

22  what she has alleged created an unlawful hostile work environment for her based on race in

23  violation of Title VII. Lee's Title VII hostile work environment claim based on race should

24  therefore be dismissed without leave to amend.

25  **F.    Count 4 For Retaliation In Violation Of Title VII Should Be Dismissed In For
26         Failure To Exhaust Administrative Remedies And Failure To State A Claim**

27       Title VII is violated if the employer retaliates against an employee for opposing conduct

28  made unlawful by Title VII or by participation in the machinery set up by Title VII to enforce

PLAZA DE JENNINGS & CHIPMAN LLP
ATTORNEYS AT LAW
ALAMEDA

its provisions. *Hashimoto v. Dalton*, 118 F.3d 671, 680 (9th Cir. 1997). In order to state a claim under Title VII for retaliation for engaging in protected activity, a plaintiff must allege that (1) she engaged in protected activity, (2) her employer subjected her to a materially adverse employment action, and (3) a causal link exists between the protected activity and the adverse action. *Westendorf v. W. Coast Contractors of Nex., Inc.*, 712 F.3d 417, 421 (9th Cir. 2013). The Court's May 7th Order dismissed Defendants' District and De Anza's Title VII retaliation claim because it was unclear that Plaintiff was complaining about an employment practice that she believed Violated Title VII, and the Court therefore could not evaluate the potential causal connection between that complaint and the adverse action (Lee's ultimate termination). Leave to amend was granted to identify complaints or grievances she believed she was retaliated against for making, and the adverse employment actions she believed resulted. ECF No. 51, 14:1-9.

Count 4 as pleaded is bare-bones and conclusory. Plaintiff simply alleges that she "submitted multiple grievances objecting to the hostile environment created as part of the policies, practices and processes of Defendants." SAC, ¶ 284. It is further alleged that Lee's "grievances went nowhere," and that Lee also complained to her supervisors about "racial epithets and racial stereotypes peddled by De Anza in the name of "antiracism," and "social justice." As a result, Lee was placed in a "virtual rubber room," subjected to a "struggle session" before the Board of Trustees, and was eventually fired. SAC, ¶ 289-292. Although not specifically mentioned in Count 4 itself, the SAC includes references to a March 31, 2022 "formal grievance complaint detailing discrimination and harassment in violation of District policies," and a November 7, 2022 "additional grievance complaint" alleging a "hostile environment." It is further alleged that on November 16, 2022, Plaintiff "complained that race-based stereotypes were polluting her workplace." Count 4 as currently pleaded still lacks clarity regarding whether Plaintiff believed that her complaints and grievances alleged conduct prohibited by Title VII. Accordingly, Count 4 should be dismissed without leave to amend.

To the extent that Plaintiff is determined to have sufficiently alleged a claim for retaliation

PLAZA DE JENNINGS & CHIPMAN LLP
ATTORNEYS AT LAW
ALAMEDA

1    under Title VII in Count 4, such claim should be limited to discrete retaliatory acts occurring

2    after November 18, 2022 (i.e. 300 days prior to Plaintiff's dual-filing of her charge with the

3    California Civil Rights Department (herein "CRD") and EEOC on September 14, 2023). *Nat'l*

4    *R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002).

### G.   Count 5 For Violation Of California's Fair Employment And Housing Act (FEHA) Must Be Dismissed On Multiple Grounds

#### 1.   The FEHA Claims Against Defendants De Anza And The District Were Already Dismissed *Without Leave To Amend*

The Court's May 7th Order dismissed Plaintiff's FEHA claims against De Anza and the

District *without leave to amend* on Eleventh Amendment immunity grounds.  ECF No. 51, 16:11-

12.  Nonetheless, the entirety of new Count 5 (FEHA) itself, remains unamended except for the

insertion of two numbers ("3" and "4") and the word "are," and the body of Count 5 alleges

discrimination against Lee under FEHA *solely by the District and De Anza* who have already

been dismissed without leave to amend.   No other Defendants are mentioned in the Count 5

allegations.  SAC ¶¶ 296-304.  Likewise, the Count 5 caption includes the District and De Anza

as defendants.  On this basis alone, the entirety of Count 5 should be dismissed without leave to

amend at this juncture because Plaintiff failed to follow the Court's May 7th Order.

#### 2.   To The Extent That Plaintiff Intends To Bring A FEHA Racial Harassment Claim Against Defendants Holmes, Espinosa-Pieb, Hearn, Ray And Cortez, Count 5 Fails To State A Claim

With respect to the individual Defendants, who Count 5 only references in the caption, the

May 7th Order dismissed Plaintiff's FEHA racial harassment claim against individual Defendants

Holmes, Cortez, Espinosa-Pieb, Ray and Hearn, but with leave to amend.[10]  Leave to amend was

granted on the ground that, similar to Lee's Title VII claims, Plaintiff's FEHA racial harassment

claims were not adequately pleaded.  With respect to the Lee's Title VII hostile environment

claim, the Court noted that "in the context of an academic workplace in which discussing topics

---

[10] As asserted in Defendants' Motion to Dismiss the FAC (ECF No. 34, p. 21), it is well settled that there is no individual liability under FEHA for claims of discrimination or retaliation as a matter of law.  *Reno v. Baird*, 18 Cal.4th 640 (1998) (no individual liability for discrimination under FEHA); *Jones v. The Lodge at Torrey Pines P'ship*, 42 Cal.4th 1158, 1173 (2008) (no individual liability for retaliation under FEHA).

22

PLAZA DE JENNINGS & CHIPMAN LLP
ATTORNEYS AT LAW
ALAMEDA

of race appears to have been central to Dr. Lee's job responsibilities, [the conduct alleged] does not appear severe and pervasive enough to have interfered with Dr. Lee's performance of her job or otherwise alter the conditions of her employment. Dr. Lee may have disagreed with the ideas presented, but showing a hostile work environment required more than disagreement or academic discussion of offensive ideas." ECF No. 51, 15:25-28,16:1-4. Therefore, the Court ordered Plaintiff in any amended complaint to identify the specific conduct she contends created a hostile work environment *and explain why that conduct, when considered in the specific academic context of her position, was sufficiently severe and pervasive to violate Title VII.* ECF No. 51, 16:4-7, 13-15. Plaintiff has not done so with respect to her Count 5 (FEHA) racial harassment individual liability claims (or her Title VII hostile work environment employer liability claims in Count 3).

Ultimately, Count 5 consists entirely of bare-bones conclusory legal allegations that are not entitled to the *Iqbal/Twombly* presumption of truth and are insufficient to state a claim. *Iqbal, supra*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice") Likewise, while Count 5 does, by rote, incorporate the foregoing 295 Paragraphs in the SAC on a wide variety of topics unrelated to a cause of action under FEHA (then reincorporates Counts 3 and 4 again), such an approach does not provide the requisite fair notice to the individual Defendants under Rule 8(a)(2) of what Plaintiff is claiming to sufficiently enable Defendants sued in their individual capacities to defend themselves. Because Plaintiff has made no effort whatsoever to amend Count 5 to conform to the Court's Order to adequately plead racial harassment claims against the individual Defendants under FEHA, and her claims against them remain inadequately pleaded after three tries, dismissal of Count 5 is wholly warranted at this juncture for Defendants Holmes, Espinosa-Pieb, Hearn, Ray or Cortez with prejudice.

### 3.    Failure To Exhaust[11]

Finally, Count 5 is for alleged violation of California's Fair Employment & Housing Act,

---

[11]Defendants raised failure to exhaust as part of their prior motion. It is being raised again because this issue was not addressed in the May 7th Order.

PLAZA DE JENNINGS & CHIPMAN LLP
ATTORNEYS AT LAW
ALAMEDA

1  Cal. Gov't Code §§ 12940 *et seq*. (FEHA).  *Before* filing a civil action in court alleging violations

2  of FEHA, a plaintiff *must* first exhaust their administrative remedies with the California Civil

3  Rights Department (herein "CRD").[12]  *See e.g. Kim v. Konad USA Distrib., Inc.*, 226 Cal. App. 4th

4  1336, 1345 (2014) ("Before filing a civil action alleging FEHA violations, a [complainant] must

5  exhaust his or her administrative remedies with DFEH"); *Jumaane v. City of Los Angeles*, 241

6  Cal. App. 4th 1390, 1402 (2015) (plaintiff bears the burden of pleading timely filing of a sufficient

7  complaint with the DFEH and obtaining right-to-sue notice); *see also Williams v. Am. Airlines,*

8  *Inc.*, 2020 U.S. Dist. LEXIS 49949, at *14 (N.D. Cal. March 23, 2020) (following California

9  decisions requiring exhaustion with DFEH and receipt of a right-to-sue letter from DFEH *prior* to

10  filing civil suit).

11      Plaintiff alleged in her initially filed Complaint that she had obtained her right-to-sue

12  letter from the CRD and that the right-to-sue letter was attached.  SAC ¶ 303.  However,

13  Plaintiff's Complaint as initially filed attached no-right-to-sue letter.  On September 14, 2023,

14  *two months after* filing her initial Complaint, Plaintiff filed a complaint with the CRD and

15  requested an immediate right-to-sue letter, which was issued that same day.  Plaintiff has now

16  attached a September 14, 2023 immediate right-to-sue cover letter to her First and Second

17  Amended Complaints as if it had been the one referenced in her initial Complaint filed July 10,

18  2023 as *already received*.  As is evident from the complete September 14, 2023 immediate right-

19  to-sue letter package provided previously by Plaintiff's counsel, Plaintiff's complaint was filed

20  with the CRD on September 14, 2023 and she therefore did not exhaust this jurisdictional pre-

21  requisite prior to initiating this litigation on July 10, 2023.  RJN, Exhibit 6 to Decl. of Chipman.

22      Accordingly, Lee is precluded from pursuing her FEHA claims in this litigation against

23  Defendants Holmes, Espinosa-Pieb, Hearn, Ray or Cortez as a matter of law and therefore they

24  should be dismissed with prejudice.

25  **IV.   CONCLUSION**

26      Defendant's Motion to Dismiss Counts 1 through 5 of the SAC should be granted in its

27

28  [12] The California Civil Rights Department was formerly California's Department of Fair
Employment & Housing (DFEH).

24

PLAZA DE JENNINGS & CHIPMAN LLP
ATTORNEYS AT LAW
ALAMEDA

1  entirely on the grounds set forth above without leave to amend.

2

3  Dated:        June 14, 2024                    PLAZA DE JENNINGS & CHIPMAN LLP

4

5                                                 By: _Jayne B. Chipman_

6                                                     Carmen Plaza de Jennings
                                                      Jayne Benz Chipman

7                                                 Attorneys for Defendants

8                                                 THE FOOTHILL-DE ANZA
                                                  COMMUNITY COLLEGE DISTRICT,
9                                                 DE ANZA COLLEGE, LEE LAMBERT,
                                                  PATRICK J. AHRENS, LAURA CASAS,
10                                                PEARL CHENG, PETER LANDSBERGER,
                                                  LEE LAMBERT, GILBERT WONG,
11                                                CHRISTINA ESPINOSA-PIEB, ALICIA
                                                  CORTEZ, LYDIA HEARN, LLOYD A.
12                                                HOLMES, and THOMAS RAY

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAZA DE JENNINGS & CHIPMAN LLP
ATTORNEYS AT LAW
ALAMEDA

25