CARMEN PLAZA DE JENNINGS (SBN 091742)
cpdjennings@pjclawyers.com
JAYNE BENZ CHIPMAN (SBN 140048)
jchipman@pjclawyers.com
PLAZA DE JENNINGS & CHIPMAN LLP
1000 Marina Village Parkway, Suite 110
Alameda, CA  94501
Telephone:  (510) 319-7080

Attorneys for Defendants
THE FOOTHILL-DE ANZA
COMMUNITY COLLEGE DISTRICT,
DE ANZA COLLEGE, PATRICK J.
AHRENS, LAURA CASAS, PEARL CHENG,
PETER LANDSBERGER, LEE LAMBERT,
and GILBERT WONG, in their official capacities;
CHRISTINA ESPINOSA-PIEB, in her official
and individual capacities; ALICIA CORTEZ,
LYDIA HEARN, LLOYD A. HOLMES,
and THOMAS RAY, in their individual
capacities,

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

TABIA LEE,

     Plaintiff,

vs.

THE FOOTHILL-DE ANZA
COMMUNITY COLLEGE DISTRICT,
DE ANZA COLLEGE, PATRICK J.
AHRENS, LAURA CASAS, PEARL
CHENG, PETER LANDSBERGER, LEE
LAMBERT, and GILBERT WONG, in
their official capacities; CHRISTINA
ESPINOSA-PIEB, in her official and
individual capacities; ALICIA CORTEZ,
LYDIA HEARN, LLOYD A. HOLMES,
and THOMAS RAY, in their individual
capacities,

     Defendants.

Case No.  5:23-cv-03418-EKL

**DEFENDANTS' REPLY BRIEF IN
SUPPORT OF MOTION TO DISMISS
SECOND AMENDED COMPLAINT**

**Date:  Original Date Vacated; To Be
Rescheduled**
**Time:** 10:00 a.m.
**Judge:** Hon. Eumi K. Lee
**Courtroom:** 7

PLAZA DE JENNINGS & CHIPMAN  LLP
ATTORNEYS AT LAW
ALAMEDA

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAZA DE JENNINGS & CHIPMAN LLP
ATTORNEYS AT LAW
ALAMEDA

## <u>TABLE OF CONTENTS</u>

**Page(s)**

I.    INTRODUCTION ..................................................................................................... 1

II.   ARGUMENT ........................................................................................................... 1

    A.    Count 1 (42 U.S.C. § 1983 -- First Amendment Retaliation Claim For Damages) ....... 1

        1.    Plaintiff Has Failed To Plausibly Allege Facts Demonstrating That Plaintiff's Alleged Speech Set Forth In Count 1 Was Protected Academic Speech On Matters Of Public Concern Under *Demers* ........................................................ 1

        2.    Plaintiff Has Not Adequately Alleged That Any Individual Defendant Intentionally Retaliated Against Her For Particular Protected Academic Speech ................................................................................................................... 8

        3.    Qualified Immunity .................................................................................. 10

    B.    Count 1 (42 U.S.C. § 1983 -- First Amendment Retaliation Claim For Injunctive Relief) ........................................................................................................................... 10

    C.    Count 3 (Title VII -- Hostile Environment Based On Race) ...................................... 11

    D.    Count 4 (Title VII -- Retaliation) .............................................................................. 14

    E.    Count 5 (FEHA – Racial Harassment) ....................................................................... 15

III.  CONCLUSION ...................................................................................................... 15

ii

1
2                            <u>**TABLE OF AUTHORITIES**</u>
3                                                                          **Page(s)**
4
     **Cases**
5
*Arizona Students' Assn. v. Ariz. Bd. Of Regents*
6      824 F.3d 858 (9th Cir. 2016).............................................................. 12
7    *Arpin v. Santa Clara Valley Transp. Agency*
       261 F.3d 912 (9th Cir. 2001)............................................................... 6
8
     *Ashcroft v. Iqbal*
9      556 U.S. 662 (2009)............................................................................ 10

10   *Beverly Oaks Physicians Surgical Ctr. v. Cal. Physicians Servs.*
       2019 U.S. Dist. LEXIS 239535, at *11 (C.D. Cal. Jan. 16, 2019)............... 7
11
     *Branch v. Tunnell*
12     14 F.3d 449 (9th Cir. 1994)................................................................. 5

13   *De Piero v. Pa. State Univ.*
       2024 U.S. Dist. LEXIS 5768 (E.D. Pa. Jan. 10, 2024) ......................... 13
14
     *Demers v. Austin*
15     746 F.3d 402 (9th Cir. 2014)......................................................... *passim*

16   *DeWeese v. Cascade Gen. Shipyard,*
       2011 U.S. Dist. LEXIS 87027, at *29 (D. Or. May 9, 2011)..................... 14
17
     *EEOC v. Tesla, Inc.*
18     2024 U.S. Dist. LEXIS 58268, at *25 (N.D. Cal. Mar. 29, 2024) ............. 7

19   *Garcetti v. Ceballos*
       547 U.S. 410 (2006)............................................................................ 2
20
     *Hafer v. Melo*
21     502 U.S. 21 .................................................................................... 11

22   *James v. United Furniture Workers Local 89262*
       2021 U.S. Dist. LEXIS 154023 (N.D. Cal. August 16, 2021) ................. 17
23
     *Koala v. Khosla*
24     931 F.3d 887 (9th Cir. 2019)............................................................. 12

25   *Monell v. Dep't of Soc. Servs.*
       436 U.S. 658 (1978)........................................................................... 11
26
     *Pickering v. Bd. Of Education*
27     391 U.S. 563 (1968) ......................................................................... 3

28   *Sharp v. Activewear*, L.L.C.
       69 F.4th 974 (9th Cir. 2023)............................................................. 13

PLAZA DE JENNINGS & CHIPMAN LLP
ATTORNEYS AT LAW
ALAMEDA

*Sutton v. Derosia*
  2012 U.S. Dist. LEXIS 14743 at *63 (E.D. Cal. Oct. 12, 2012) .............................................. 16

*Wrighten v. Metro. Hosp., Inc.*
  726 F.2d 1346 (9th Cir. 1984) .................................................................................................. 17

**Statutes**

42 U.S.C. § 1983 ............................................................................................................... *passim*

42 U.S.C. § 2000-e ........................................................................................................... *passim*

Cal. Gov't Code § 12940(j)(3) ................................................................................................ 15

Cal. Gov't Code 12940 *et seq.* ................................................................................................. 1

PLAZA DE JENNINGS & CHIPMAN LLP
ATTORNEYS AT LAW
ALAMEDA

iv

## I.    INTRODUCTION

This case is pending before the Court on the Motion to Dismiss Second Amended Complaint (ECF No. 55) (herein "Motion to Dismiss" or "Motion") filed by all Defendants. Plaintiff Tabia Lee's (herein "Plaintiff" or "Lee") Second Amended Complaint (herein "SAC") contains five Counts for relief under federal and state law.  As a preliminary matter, Plaintiff's Opposition to the Motion to Dismiss (ECF No. 59) (herein "Opposition")[1] does not oppose dismissal of **Count 2** (42 U.S.C. § 1983 – First Amendment Free Speech Censorship). Plaintiff's non-opposition thus concedes by implication that Count 2 should therefore be dismissed with prejudice in its entirety against all Defendants.  The four remaining Counts -- **Count 1** (42 U.S.C. § 1983 – First Amendment Free Speech Retaliation), **Count 3** (Title VII, 42 U.S.C. § 2000-e – Hostile Work Environment (Race)), **Count 4** (Title VII, 42 U.S.C. § 2000-e – Retaliation), and **Count 5** (FEHA, Cal. Gov't Code 12940 *et seq.* – Racial Harassment) should likewise be dismissed with prejudice as Plaintiff's Opposition fails to successfully rebut any of the grounds for dismissal of set forth in Defendants' Motion.

## II.    ARGUMENT

### A.   <u>Count 1 (42 U.S.C. § 1983 -- First Amendment Retaliation Claim For Damages)</u>

The Court's May 7, 2024 Order On Motion To Dismiss (herein "May 7th Order") required Plaintiff, in order to plausibly allege a First Amendment claim for damages against any Defendant sued in their individual capacity for damages (Espinosa-Pieb, Cortez, Hearn, Holmes, Ray) in any amended complaint, to do as follows:  "for each claim, identify the protected speech, how particular defendants violated her free expression rights with respect to that speech, and how defendants' actions cause her injuries."  ECF No. 51, 9:9-12.  Plaintiff has failed to do so and Count 1 should be dismissed with prejudice against Defendants Espinosa-Pieb, Cortez, Hearn, Holmes and Ray sued in their individual capacities for damages.

1. **Plaintiff Has Failed To Plausibly Allege Facts Demonstrating That Plaintiff's Alleged Speech Set Forth In Count 1 Was Protected Academic Speech On Matters Of Public Concern Under *Demers***

---

[1] Page references to the Opposition herein are to the page numbers on the bottom of the Opposition document itself and not the ECF page count number on the header.

PLAZA DE JENNINGS & CHIPMAN  LLP
ATTORNEYS AT LAW
ALAMEDA

The Court in its May 7th Order stated that for Plaintiff to adequately plead in any amended complaint that particular speech is protected by the First Amendment (i.e. that Plaintiff engaged in constitutionally protected activity), she "must *plausibly allege* that the alleged speech was either (1) academic speech on a matter of public concern and thus potentially protected under *Demers*,[2] or (2) not made pursuant to her official responsibilities and thus potentially protected under *Garcetti*."[3]  (Emphasis added.)  ECF No. 51, 7:8-12.  Plaintiff was also required to identify the specific academic speech or non-official speech that she contends was the basis for retaliation. ECF No. 51, 8:5-7.  Plaintiff has not *plausibly alleged facts* in the SAC that Plaintiff engaged in constitutionally protected speech and therefore did not comply with the threshold requirement in the Court's May 7th Order.

Count 1 lists eight instances of alleged constitutionally protected speech but fails to specify the basis for the constitutional protection for each instance of speech (i.e. academic speech on a matter of public concern or speech not made pursuant to her official duties) as required to state a claim.  Plaintiff contends in her Opposition that all eight instances of alleged speech set forth in Count 1 were constitutionally protected academic speech on a matter of public concern under *Demers*.[4]  Opposition, 6:11-13.  In *Demers*, the Ninth Circuit held that "*Garcetti* does not …. apply to *teaching and academic writing* that are performed 'pursuant to the official duties' of a teacher and professor." (Empasis added.) *Id*. at 412.  The Ninth Circuit determined that a public university professor's *teaching and academic writing* was an exception to the *Garcetti* rule, and was instead to be analyzed under the balancing test set forth in *Pickering*.[5]  *Id*.,

[2] *Demers v. Austin*, 746 F.3d 402, 412 (9th Cir. 2014).
[3] *Garcetti v. Ceballos*, 547 U.S. 410 (2006) (holding that when public employees "make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline.")
[4] In *Demers*, a tenured professor at the Edward R. Murrow College of Communication at Washington State University ("Murrow School") prepared, published and distributed a two-page pamphlet (The 7-Step Plan) that outlined the historical relationship between mass communication programs (e.g. journalism, public broadcasting, public relations, advertising) and the academy in general.  The Plan proposed seven steps that would increase the influence of mass communications professionals and reduce the influence of academic Ph.Ds at the Murrow School.
[5] *Pickering v. Bd. Of Education*, 391 U.S. 563 (1968).  Under the *Pickering* two-part balancing test, the employee must first show that their speech addressed a "matter of public concern."

2

PLAZA DE JENNINGS & CHIPMAN LLP
ATTORNEYS AT LAW
ALAMEDA

at 412.

Under *Pickering* the employee must first show that their speech addressed a "matter of public concern."  Although the Ninth Circuit in *Demers* recognized that speech involves a "matter of public concern when it can fairly be considered to relate to 'any matter of political, social, or other concern to the community,'" the Ninth Circuit also emphasized that the "*content, form and context of a given statement*, as revealed by the whole record" must also be considered (content is the most important factor).[6]  (Emphasis added.)  *Id*. at 415 (citations omitted).  In this regard, and significantly as applied to the present case, the Ninth Circuit noted that "not all speech by a teacher or professor addresses a matter of public concern."  *Id*. at 416.

The Ninth Circuit, in determining that The 7-Step Plan (pamphlet) prepared by the professor in *Demers* in connection with his official duties as a faculty member at the Murrow School was "*academic speech*" and therefore an exception to *Garcetti*, found significant that the Plan was a "proposal to implement a change to the Murrow School that, if implemented, would have substantially altered the nature of what was taught at the school, as well as the composition of the faculty that would teach it."  *Demers*, *supra* at 415.  Next, the Ninth Circuit analyzed whether the professor's "academic speech" (The 7-Step Plan) addressed a "*matter of public concern*" under *Pickering* by considering the "content, form and context" of The 7-Step Plan.   In so doing, the Ninth Circuit found significant that The 7-Step Plan gave an abbreviated history of mass communications programs and the academy in general, placed the communications program at the Murrow School in that wider context, and contained serious suggestions about the course of the program at a time when a "Structure Committee" had been appointed (of which Demers was a member) to address some of the same issues addressed in The 7-Step Plan.  *Id*. at 416.  Additionally, per the Ninth Circuit, The 7-Step Plan "did not focus on a personnel issue or internal dispute," and did not "address the role of particular individuals in the Murrow School, or

---

Second, the employee's interest in commenting on matters of public concern must outweigh the interest of the public employer in promoting the efficiency of the public services it performs through its employees.

[6] Plaintiff's Opposition quotes this language from *Demers* but importantly omits the Court's qualification that such writing – "[*d*]*epending on the scope and character*" – may well address matters of public concern.  Opposition, 4:25-27, 5:1-4.

PLAZA DE JENNINGS & CHIPMAN LLP
ATTORNEYS AT LAW
ALAMEDA

1    voice personal complaints." *Id*. Finally, the Ninth Circuit noted that the manner in which The 7-

2    Step Plan was distributed reinforced the conclusion that it addressed matters of public concern;

3    Demers widely circulated the Plan both within the University, and to alumni and friends, to

4    newspapers, and posted it on his website.

5              Likening her speech to The 7-Step Plan at issue in *Demers*, Plaintiff's Opposition

6    contends that all eight instances of her alleged speech set forth in Count 1 were constitutionally

7    protected "academic employee speech" on a matter of public concern under *Demers*.  Opposition,

8    6:11-13.   The eight instances of speech in the SAC that Plaintiff now asserts are all "academic

9    speech" on a matter of public concern are the same alleged instances of speech that the Court

10   previously found were lacking in sufficient plausible factual detail to determine if the speech

11   alleged was protected academic speech.   ECF No. 51, 7:12-27.   The only difference now is that

12   those same instances of alleged speech have been couched in conclusory allegations without

13   plausible facts in the SAC as "pedagogy," "teaching," "scholarship" and "speech aimed to

14   substantially alter what was taught at De Anza."   Such conclusory characterizations without more

15   are not plausible facts, and are insufficient to meet the requirements of the Court's May 7, 2024

16   Order to state a viable legal claim:

17   •   <u>Reports To The Academic Senate (And A Newsletter):</u>[7]   The Court's May 7th Order

18   identified Plaintiff's "report outs" to the Academic Senate (and the newsletter printing the text of

19   the November 29, 2021 verbal "report out") as appearing from the allegations of the FAC to be

20   speech made within Plaintiff's official duties but that involved neither teaching nor academic

21   writing under *Demers*.   ECF No. 51, 7:24-25.   No allegations added to the SAC change this

22   conclusion.   The amendments added to the SAC (¶¶ 105-108 regarding Plaintiff's first "report

23   out" and newsletter) largely parrot, in a formulaic and conclusory manner, the language in

24   *Demers* without actually adding plausible facts establishing that Plaintiff's speech, in the present

25   case, was "academic speech" on a matter of public concern.   The amendment to SAC ¶ 165

26   (second "report out") referenced in Plaintiff's Opposition only added the conclusory allegation

27

28   ———————————
     [7] Plaintiff's Opposition has combined the academic senate reports and Plaintiff's newsletter into
     one instance of alleged academic speech.

PLAZA DE JENNINGS & CHIPMAN LLP
ATTORNEYS AT LAW
ALAMEDA

4

PLAZA DE JENNINGS & CHIPMAN LLP
ATTORNEYS AT LAW
ALAMEDA

that she "spoke out on this issue to the Academic Senate." No actual plausible facts have been alleged in the referenced SAC paragraphs that establish how Plaintiff's "speaking out" was academic speech (i.e. teaching or academic writing) within her job duties on a matter of public concern.  The amendments are comprised of conclusory allegations and legal conclusions cast in the form of factual allegations of the type not subject to the presumption of truth under *Iqbal/Twombly* and are insufficient to cure the pleading deficiencies and provide each Defendant with fair notice in order to defend themselves in a claim for damages. *See* SAC, ¶ 105 (19:20-22), ¶ 106 (19:26-28).

- Criticism of Defendants' Use Of Misspelling Foreign Words Like "Latino": The Court's May 7th Order identified the "email to Office of Research" as appearing from the allegations of the FAC to be speech made within Plaintiff's official duties but that involved neither teaching nor academic writing. EFC. No. 51, 7:23-24.  This instance of alleged protected speech concerns a mid-November email exchange between Plaintiff and De Anza College's Supervisor of Institutional Planning and Research regarding "Student Survey Terms – Request for Information." *See* Request for Judicial Notice, ECF Nos. 56 and 56-1.[8] The SAC now describes this email exchange with the Office of Research as Plaintiff "speaking out" on "a matter of public concern and pedagogy." SAC, ¶ 87. These are simply conclusory allegations not subject to the presumption of truth under *Iqbal/Twombly*. Moreover, Plaintiff has failed to add any plausible facts to the SAC (¶¶ 88-89) to demonstrate that Plaintiff's email exchange with the Office of Institutional Planning and Research, considering its "content, form and context," was constitutionally protected speech under *Demers*. The implausibility that Plaintiff's information

---

[8] The email exchange specifically referenced in, and quoted in, the SAC is not "extraneous evidence" as contended in Plaintiff's Opposition and is subject to Judicial Notice.  While material "outside the complaint" (i.e. "extraneous") should not be considered on a motion to dismiss, "a document is not 'outside' the complaint if the complaint specifically refers to the document and if its authenticity is not questioned." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994) (holding that documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss without converting it to a motion for summary judgment). *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001) is consistent with the *Branch* rule.

PLAZA DE JENNINGS & CHIPMAN LLP
ATTORNEYS AT LAW
ALAMEDA

1  request to the Office of Research was academic speech on an issue of public concern is even more

2  apparent when the SAC's selective quotations from the email exchange are viewed within the full

3  context of the actual email exchange, which Plaintiff did not attach to the SAC.  SAC, ¶¶ 87-89.

4  • <u>Opposition to Illegally Segregated "Affinity Groups" and "Safe Spaces"</u>:  This instance of

5  speech concerns statements allegedly made by Plaintiff at an Office of Equity team meeting on

6  October 4, 2021 regarding "culturally responsive and transformation curriculum pedagogy."

7  Opposition, 8:12.  The Court's May 7th Order identified Plaintiff's alleged statements as

8  appearing to be speech made within Plaintiff's official duties but that involved neither teaching

9  nor academic writing (i.e. not academic speech under *Demers*).  ECF No. 51, 7:22-23.   In an

10  attempt to cure this deficiency, conclusory language has been inserted into the relevant paragraph

11  in the SAC regarding the team meeting (i.e. the team meeting as "convened to address substantial

12  changes to pedagogy at De Anza")  SAC, ¶ 72.   In the SAC, Plaintiff's "speech" during the team

13  meeting at issue has likewise now been couched as "collaborating with faculty" and addressing

14  "the issue of what pedagogical resources should be made available at De Anza."  SAC, ¶ 78.   As

15  such, what has been added to the SAC are simply conclusory allegations and legal conclusions,

16  not plausible facts of "academic speech" on a matter of public concern.  Moreover, taking into

17  consideration the "content, form and context" of the October 4, 2021 team meeting (i.e. an office

18  meeting with Plaintiff, two "lower level" staff, and another Faculty Coordinator),[9]  Plaintiff has

19  not plausibly alleged that she engaged in protected academic speech under *Demers* at the

20  meeting.[10]

21  • <u>Criticism of Defendants' "land acknowledgement"</u>:  The Court's May 7th Order identified

22  Plaintiff's "unspecified 'objection' to land acknowledgement" as insufficient to allege protected

23  academic speech under *Demers*.  ECF No. 51, 7:24.  In an effort to remedy this deficiency,

[9] The SAC refers to Santa Ana (Program Coordinator) and Garcia (Administrative Assistant) as "lower level staff members."  SAC, ¶ 48. Caparas was a faculty member and the Faculty Coordinator for the Women, Gender, and Sexuality Center.  SAC, ¶¶ 73.
[10] The Opposition claims inaccurately that Defendants improperly "dispute" facts.  Defendants have appropriately asserted that Plaintiff has not alleged plausible facts to support her otherwise conclusory allegations.  The facts of *Beverly Oaks Physicians Surgical Ctr. v. Cal. Physicians Servs.*, 2019 U.S. Dist. LEXIS 239535, at *11 (C.D. Cal. Jan. 16, 2019), cited by Plaintiff, bear no resemblance to Defendants' assertion that Plaintiff has failed to allege plausible facts.

DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS SAC
CASE NO. 5:23 -CV-03418-EKL

Plaintiff has added conclusory language and legal conclusions to SAC ¶¶ 92-98 (e.g. "This constant drumbeat and enforcement of racial stereotypes not only created a hostile environment"). What remains absent in the SAC is plausible facts regarding the "form and context" for her alleged speech necessary for the Court and Defendants to determine whether the alleged "objection" was "academic speech" (i.e. teaching or academic writing) within her job duties on a matter of public concern.  Plaintiff's Opposition merely claims, without addressing the Court's concern about the "unspecified" nature of the "objection," that her alleged "objection" was protected speech made in the course of her job duties about a matter of public concern.  This is insufficient to cure the pleading deficiencies noted by the Court and to give Defendants fair notice so they can defend themselves in a claim for damages.[11]

- Criticism of Black Lives Matter and leading students in posting benign questions to founder Ms. Garza:  Plaintiff's allegations in the SAC surrounding her moderation of the Alicia Garza event fail to allege plausible facts of protected "academic speech" by Plaintiff.  Although Plaintiff now inserts into the SAC that the event was a "teaching and pedagogical activity," Plaintiff's alleged prompting of students to ask Garza unscripted questions is not academic speech by Plaintiff herself on a matter of public concern.  The SAC merely adds in relevant part to the existing language in SAC, ¶ 25 as follows:  "– *by criticizing Ms. Garza's willingness to engage openly* with students who had prepared questions about her book." SAC, ¶ 205.  The addition of this unspecified phrase regarding Plaintiff's alleged criticizing the format of a speaker's engagement is insufficient to plausibly allege facts that Plaintiff in-so-doing was engaging in protected academic speech under *Demers* on a matter of public concern.

- Opposition to prevalent anti-Semitism on the District campuses and advocacy of Jewish heritage events:  According to Plaintiff's Opposition, this instance of alleged protected "academic speech" under *Demers* is comprised of the following additions to the SAC:  (1) Plaintiff's alleged unspecified meeting with Dean Cortez (her supervisor) about anti-Semitism on

---

[11] *EEOC v. Tesla, Inc.*, 2024 U.S. Dist. LEXIS 58268, at *25 (N.D. Cal. Mar. 29, 2024) cited by Plaintiff, a Title VII harassment case, is inapplicable to the issue of pleading specificity necessary to plausibly allege a First Amendment retaliation case based on alleged protected academic speech.  The pleading specificity required in this case is set forth in the May 7th Order.

DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS SAC
CASE NO. 5:23 -CV-03418-EKL

PLAZA DE JENNINGS & CHIPMAN LLP
ATTORNEYS AT LAW
ALAMEDA

PLAZA DE JENNINGS & CHIPMAN LLP
ATTORNEYS AT LAW
ALAMEDA

1  campus (SAC, ¶ 125); (2)  Plaintiff's unspecified "advocating" for Jewish-American Heritage

2  Month and International Holocaust Remembrance Day "as part of her efforts to address pedagogy

3  on campus" (SAC, ¶ 125); and (3) Plaintiff's holding a Jewish Inclusion summit with two

4  speakers, which the SAC describes as "Dr. Lee's teaching on campus."  SAC ¶ 130.  The

5  unspecified, generalized nature of Plaintiff's alleged "protected" speech in SAC ¶¶ 125 and 130,

6  and the absence of plausibly alleged facts about the "form, content and context" of these instances

7  of alleged speech, are insufficient to meet the Court's direction in the May 7th Order that Plaintiff

8  "must *identify the specific academic* or non-official s*peech*."  ECF No. 51, 8:6-7.

9  • Underline: Publication In Journal Of Free Black Thought Criticizing "Third-Wave-Anti-Racism":

10  Plaintiff's publication in the "Journal of Free Black Thought" was published on February 28,

11  2023,[12] two weeks after Plaintiff alleges that her Tenure Review Committee met with Plaintiff to

12  advise her that she would not be advanced to Phase III of the tenure review process and thus, was

13  not a basis for her alleged retaliatory termination.  SAC, ¶¶ 45, 231.  Moreover, Plaintiff has

14  merely added to the SAC conclusory allegations that she "criticized third-wave anti-racism in her

15  scholarship and teaching." SAC, ¶ 45.  Similar conclusory allegations without plausible facts

16  have also been added in SAC ¶¶ 46, 142, 150 232, 257 referenced in Plaintiff's Opposition.

17  Again, such conclusory allegations are insufficient to meet the Court's direction in the May 7th

18  Order that Plaintiff "must *identify the specific academic* or non-official s*peech*."  ECF No. 51,

19  8:6-7.

20  Based on the foregoing, Count 1 should be dismissed because Plaintiff has failed to

21  plausibly allege in the SAC that she "engaged in constitutionally protected activity" required to

22  state a First Amendment retaliation claim.

23  **2.  Plaintiff Has Not Adequately Alleged That Any Individual Defendant Intentionally Retaliated Against Her For Particular Protected Academic Speech**

24  Plaintiff's Opposition incorrectly contends that the SAC "contains more than enough

25

26

27  [12] Contrary to SAC ¶ 45, and at Opposition, 6:11-13, Plaintiff's Opposition now contends in this

28  section that her publication in the "Journal of Free Black Thought" (February 28, 2023) was not made pursuant to her official duties but was on a matter of public concern (and thus *Pickering* applies).

8

PLAZA DE JENNINGS & CHIPMAN LLP
ATTORNEYS AT LAW
ALAMEDA

1  factual detail to satisfy the *Iqbal/Twombly* standard," "provides each individual notice of their

2  direct, personal responsibility for specific retaliatory acts," and that Defendants are

3  inappropriately requiring a "summary-judgment level of detail prior to any discovery having

4  taken place." Opposition, 11:27-12:1-5. However, the Court's May 7th Order, consistent with

5  *Iqbal/Twombly*, [13] requires Plaintiff to provide the level of plausible factual detail to which she

6  now objects as "summary-judgment level." The Court's May 7th Order required Plaintiff to

7  *specify* for each individual Defendant (Espinosa-Pieb, Cortez, Hearn, Holmes and Ray):  *how* that

8  Defendant violated Plaintiff's free expression rights with respect *to any specific alleged protected*

9  "academic speech" (identified in Count 1), and *how* each individual Defendant's own actions

10  were the "but for" cause of her alleged injury.  ECF No. 51, 9:1-12.  The SAC has not satisfied

11  the pleading requirements set forth in the Court's May 7th Order, which are consistent with the

12  pleading requirements of *Iqbal/Twombly*.

13  As addressed in Defendants' Motion, the SAC in Count 1 for each individual Defendant

14  merely alleges in conclusory form for each individual Defendant that the Defendant "took

15  multiple retaliatory actions against Dr. Lee for her [unspecified] protected academic speech."

16  SAC, ¶¶ 242, 243, 245, 247, 248.  Attempting to explain away these pleading deficiencies in

17  Count 1, Plaintiff's Opposition takes a "throw the spaghetti on the wall and see what sticks"

18  approach.   Notably, Plaintiff's Opposition does not specify how the SAC (for each individual

19  Defendant) alleges plausible facts that link any of the eight instances of alleged protected speech

20  to retaliatory acts of any specific individual Defendant, and the resulting injury to Plaintiff by the

21  individual Defendant, as required by this Court.  Plaintiff's Opposition instead references for

22

[13] In *Iqbal*, a Section 1983 case, the Supreme Court held that "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.  [citation omitted] Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  The Court found that the following was such an example of an insufficient formulaic recitation/bare assertion:  "'[defendants] knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement 'as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest.'"  The Court also similarly found that allegations that Ashcroft was the "'principal architect' of this invidious policy" and that Mueller was "'instrumental' in adopting and executing it" were also insufficient formulaic recitations/bare assertions.  *Ashcroft v. Iqbal*, 556 U.S. 662, 680-681 (2009).

9

each individual Defendant many of the same types of conclusory allegations in the SAC  that *Iqbal/Twombly* found to be merely formulaic recitations and bare assertions and not plausible facts.   None of the SAC paragraphs referenced in Plaintiff's Opposition demonstrate how the SAC connects any specific alleged protected academic speech to any specific alleged retaliatory conduct of a particular Defendant. For example:

- The [insert name of defendant] "monitored, supervised and approved content promoting third-wave anti-racism at De Anza."  Opposition, 12:6-7 (Holmes), 13:6-7 (Espinosa-Pieb), 14:23-25 (Ray), 15:15-17 (Hearn), 14:1-2 (Cortez), referencing similarly conclusory assertions at SAC ¶¶ 41, 43, 44.

- "This included [insert name of defendant] endorsing the exclusion of white people from spaces on campus."  Opposition, 12:7-8 (Holmes), 13:11-13 (Espinosa-Pieb), 14:25-26 (Ray); 15:17-19 (Hearn); 14:3-4 (Cortez), referencing similarly conclusory assertions at SAC ¶¶ 75, 81.

- "Dr. Lee repeatedly complained to Dean Cortez of this hostile environment, but Dean Cortez did nothing, with the full knowledge and approval of Hearn, Ray, Holmes and Espinosa-Pieb." SAC ¶ 120, referenced in Opposition, 12:16-19 (Holmes), 13:12-13 (Espinosa-Pieb), 15:13-15 (Hearn).

These statements and other similar statements in the SAC fail to adequately allege "individual" and "specific" plausible facts linking the alleged actions of each individual Defendant with an intent to retaliate (i.e. retaliatory animus) against Plaintiff for any of the specific instances of alleged protected academic speech set forth in in Count 1.

### 3. Qualified Immunity

Plaintiff does not oppose or even address qualified immunity asserted by Defendants' Motion.  Motion, § III.D.  Qualified immunity should be granted for Defendants Holmes, Espinosa-Pieb, Cortez, Hearn, Holmes and Ray should the Court determine that Plaintiff has plausibly alleged a First Amendment retaliation claim for damages against any of them.

### B. Count 1 (42 U.S.C. § 1983 -- First Amendment Retaliation Claim For Injunctive Relief)

The May 7th Order, consistent with governing law, and Defendants' Motion are clear that

10

PLAZA DE JENNINGS & CHIPMAN LLP
ATTORNEYS AT LAW
ALAMEDA

PLAZA DE JENNINGS & CHIPMAN LLP
ATTORNEYS AT LAW
ALAMEDA

1   official-capacity suits for prospective injunctive relief (reinstatement) *against state officials*, such

2   as the District and De Anza College officials sued in their official capacity in this case, require

3   that Plaintiff identify a policy or custom of the governmental agency that was the moving force

4   behind the alleged constitutional violation.   ECF No. 51, 10:6-7; *Hafer v. Melo*, 502 U.S. 21, 25

5   (relying in part on Monell,[14] and holding that in a claim against a state agency official for

6   prospective injunctive relief, "the entity's 'policy or custom' must have played a part in the

7   violation of federal law"); *Arizona Students' Assn. v. Ariz. Bd. Of Regents*, 824 F.3d 858, 865 (9th

8   Cir. 2016) ("*Arizona Students*") (citing *Hafer* and *Monell*, and stating "[t]o bring such a claim the

9   plaintiff must identify a practice, policy or procedure that animates the constitutional violation at

10  issue"); *Koala v. Khosla*, 931 F.3d 887, 905 (9th Cir. 2019) (citing *Arizona Students* in a case

11  seeking prospective injunctive relief from state officials and requiring that to state a claim the

12  plaintiff must identify a practice, policy or procedure that animates the constitutional violation at

13  issue; case involved the alleged passage of the Media Act by a public university in alleged

14  retaliation for, and with the intent to silence, the student newspaper's First Amendment free

15  speech rights).   In the present case, Count 1 in the SAC fails to identify plausible facts of the

16  existence of any practice, policy or procedure that animated the alleged constitutional violation,

17  as legally required to state a claim for prospective injunctive relief.  Likewise, Plaintiff's

18  Opposition does not identify any such plausibly alleged facts.  Thus, not only has Plaintiff *failed*

19  *to allege* plausible facts that she engaged in protected "academic speech" under *Demers* as

20  required to state a retaliation claim, she has also failed to state plausible facts of a policy or

21  custom that animated the alleged constitutional violation required to state a claim for prospective

22  injunctive relief (reinstatement) against any Defendant sued in their official capacity.  All claims

23  for prospective injunctive relief should therefore be dismissed with prejudice.

24  **C. <u>Count 3 (Title VII -- Hostile Environment Based On Race)</u>**

25

26

---

27  [14] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  Plaintiff erroneously claims that
    Defendants are pursuing a "*Monell* claim," which applies only to local government agency
28  defendants.

PLAZA DE JENNINGS & CHIPMAN LLP
ATTORNEYS AT LAW
ALAMEDA

1    Nowhere in Count 4 does Plaintiff do what the Court in its May 7th Order mandated her to

2    do in any subsequent amended complaint:  "identify the specific conduct she contends created a

3    hostile work environment and explain why that conduct, *when considered in the specific*

4    *academic context of her position*, was sufficiently severe and pervasive to violate Title VII."

5    (Emphasis added.)  ECF No. 51, 16:5-7.   As noted in the May 7th Order dismissing Plaintiff's

6    First Amended Complaint:  "[a]s pleaded, *and considered in the context of an academic*

7    *workplace in which discussing topics related to race appears to have been central to Dr. Lee's*

8    *job responsibilities*, this conduct does not appear severe and pervasive enough to have interfered

9    with Dr. Lee's performance of her job or otherwise alter the conditions of her employment."

10   (Emphasis added.)  ECF No. 51, 15:25-28.  Indeed, reinforcing the Court's point, Plaintiff alleges

11   regarding her workshops presented as part of her job duties as Faculty Director of the Office of

12   Equity that "[a]t my workshops, by design, you may hear or be exposed to *diverse ideas,*

13   *controversies, different thoughts and utterances*.  It's fun!"  (Emphasis added.)  SAC, ¶ 108.

14   Plaintiff relies (again) primarily on *Sharp v. Activewear*, L.L.C., 69 F.4[th] 974 (9th Cir.

15   2023) to support her assertion that she has sufficiently pled plausible facts of a hostile work

16   environment based on race under Title VII.  The facts in *Sharp* bear no resemblance to Plaintiff's

17   claim.[15]  Likewise, the facts of the white male writing professor in *De Piero v. Pa. State Univ.*,

18   2024 U.S. Dist. LEXIS 5768 (E.D. Pa. Jan. 10, 2024) are inapposite.[16]

19   None of the examples cited by Plaintiff's Opposition demonstrate that Plaintiff – whose

20   self-described job it was to "expose [coworkers] to *diverse ideas, controversies, different*

21   *thoughts and utterances*" which she also described as "fun" – has plausibly alleged in the SAC

22   that she was subjected to a hostile work environment based on race:

23

24   [15] *Sharp* involved a workplace that was physically and audibly saturated with sexually derogatory content about women – music with sexually derogatory and violent misogynistic content blasted

25   constantly from commercial-strength speakers throughout a warehouse for two years, overpowering operational background noise and was nearly impossible to escape.  Additionally,

26   male employees frequently pantomimed sexually graphic gestures, made sexually explicit remarks, and openly shared pornographic videos while working.

27   [16] White male writing professor required to attend multiple conferences and trainings on anti-racism, and allegedly subjected to verbal assaults by his supervisors and co-workers because of

28   his race, are not similar to the facts in Plaintiff's case.

PLAZA DE JENNINGS & CHIPMAN LLP
ATTORNEYS AT LAW
ALAMEDA

1

2

3

4

5

6

7

8

9

10

11

12

13

14

- *"De Anza's Neo-Segregation"*:  Plaintiff's Opposition likens the existence of voluntary "affinity groups" and "safe spaces" at De Anza College to an unlawful segregated workplace based on race under Title VII sufficient to create a hostile work environment, citing *DeWeese v. Cascade Gen. Shipyard,* 2011 U.S. Dist. LEXIS 87027, at *29 (D. Or. May 9, 2011).  In *DeWeese*, Black pipefitters working in a shipyard alleged that they were physically segregated by their supervisor from the rest of the crew and assigned for about one month to work in isolation in the lower portion of a vessel six or seven blocks away from the rest of the crew, with no foreman visiting them for days at a time.  The Court found, in the context of other alleged events with "overt racial overtones"[17] that a trier of fact could conclude that plaintiffs were "intentionally physically segregated and isolated on the basis of their race [and] might conclude that doing so created a hostile work environment."  The court further noted that "physical separation and isolation on the basis of race could be deeply disturbing."  *DeWeese*, *supra*, 2011 U.S. Dist. LEXIS at *37-39.  Plaintiff's allegations bear no similarity or analogy to those of the Black plaintiffs in *DeWeese*.

15

16

17

18

19

20

21

22

23

24

- *"Racist Attacks on White People and on Dr. Lee for Being the Wrong Kind of Black Person:"*  This category of allegedly "racist attacks" is comprised of:  (1) a conclusory allegation that Homes "endorsed the exclusion of white people" (SAC, ¶¶ 75,81); (2)  a reference again to Chancellor Miner's implausibly alleged "expressly [making] 'decentering Whiteness' the official policy of the District on the basis of race" (SAC, ¶ 276); (3) another faculty member's alleged "vilifying people on the basis of race, namely that 'White supremacy remains a core part of every aspect of our society'" (SAC, ¶ 195); (4) three alleged comments by two "lower level staff" members and a faculty member at a team meeting regarding "Whitespeak," "decentering Whiteness," and "White Oppressors" (SAC, ¶¶ 48-51, 60-68, 77); and (5) the unamended and still unspecific "informing" of Plaintiff that she was "not the 'right kind' of Black person."  (SAC,

25

26

27

28

---

[17] Other alleged events included the drawing of Black man with big lips in a bathroom stall, derogatory comments about Black people, and circulation of a supervisor's email with references captioned "Proud to Be White" and containing racial epithets such as "nigger," "kike," "towel head," and "sand nigger."

268).  All are recycled allegations previously found by the Court to be insufficient for Plaintiff to state a claim under Title VII for hostile work environment based on race.

- *Anti-Semitism at DeAnza*":  This category consists of new allegations in the SAC of Plaintiff expressing her unspecified "concerns about anti-Semitism and hostility toward Jewish students" to Dean Cortez, the alleged "barf" comment by a fellow faculty member in response to the announcement of a Jewish Inclusion Summit" coordinated by Plaintiff (SAC, ¶¶ 125-131), and alleged comments made by a "lower level staff" person which Plaintiff viewed as "disrespectful."  (SAC, ¶¶ 131-138.)  These are the same examples that the Opposition asserts were Plaintiff's protected academic speech, recast as a hostile work environment based on race. Opposition, 10:12-23.

- *The Racist Bastardization of Spanish and Misidentification of Indigenous Peoples*":  This category is comprised of Plaintiff's objection to the "misspelling" of the words (Latinx and Filipinx) as "recently invented labels" that she viewed as "toxic," and the alleged "ignoring" of Plaintiff's objections to the Office of Equity's "land acknowledgement" to which Plaintiff objected as historically inaccurate.  (SAC, ¶¶ 87, 90, 93-94.)  These are, likewise, the same examples that the Opposition asserts were Plaintiff's protected academic speech, recast as a hostile work environment based on race.  Opposition, 7:13-27, 8:1-7.

Accordingly, Count 3 should be dismissed with prejudice because it does not plausibly allege a Title VII hostile work environment claim.

**D.  Count 4 (Title VII -- Retaliation)**

Defendants, in their Motion, have already addressed the pleading deficiencies that persist in Plaintiff's Title VII retaliation claim (Count 4), including her failure to provide clarity about whether she believed her complaints and grievances were about conduct that violated Title VII. Motion, § III.F.  Plaintiff's SAC Opposition is virtually a mirror image of her prior FAC Opposition and fails to address the pleading deficiencies raised in Defendants' current Motion. To the extent that the Court determines that Count 4 sufficiently alleges a Title VII retaliation claim, such claim should be *limited* to discrete alleged retaliatory acts occurring after November 18, 2022 as set forth more fully in Defendants Motion.

PLAZA DE JENNINGS & CHIPMAN LLP
ATTORNEYS AT LAW
ALAMEDA

14

1

**E.  Count 5 (FEHA – Racial Harassment)**

2

Plaintiff's Opposition to the FEHA claim is the same Opposition submitted in the prior

3

Motion to Dismiss the FAC and simply asserts that the two statutes (Title VII and FEHA) are

4

analyzed by the same standards.  *See* ECF No. 41, 20:15-28, 21:1-19; Opposition, 24:8-10.

5

However, with respect to individual employee liability, Title VII and FEHA are <u>not</u> analogous.

6

As noted by Defendants in their Motion to Dismiss the FAC, courts only rely on federal Title VII

7

decisions to interpret *analogous* portions of FEHA.  *See Sutton v. Derosia*, 2012 U.S. Dist.

8

LEXIS 14743 at *63 (E.D. Cal. Oct. 12, 2012), cited by Plaintiff.    Individual employees can

9

only be liable under FEHA and not Title VIII.  Under FEHA, an individual employee can only be

10

liable for their own actions.  Cal. Gov't Code § 12940(j)(3).  The SAC fails to state plausible facts

11

of a claim of harassment on the basis of race under FEHA perpetrated by any individual

12

employee (Holmes, Espinosa-Pieb, Ray, Hearn or Cortez) against Plaintiff.  Finally, Plaintiff did

13

not exhaust her administrative remedies as set forth in Defendants' Motion.  The cases cited by

14

Plaintiff are clearly distinguishable.[18]

15

### III.    CONCLUSION

16

This is Plaintiff's third attempt to plead claims with specific, plausible allegations.  Her

17

failure to do so warrants dismissal of all Counts without leave to amend.

18

19

Dated:          August 23, 2024                    PLAZA DE JENNINGS & CHIPMAN LLP

20

By: /s/ Jayne B. Chipman

21

Carmen Plaza de Jennings
Jayne Benz Chipman

22

23

Attorneys for Defendants

24

25

---

26

[18] In *Wrighten v. Metro. Hosp., Inc*., 726 F.2d 1346 (9th Cir. 1984) and *Sutton*, *supra*, at * 63, the cases were permitted to proceed *only* because the failure to exhaust had <u>not been raised</u> as a motion to dismiss when it could have been.  Likewise, in *James v. United Furniture Workers*

27

*Local* 89262, 2021 U.S. Dist. LEXIS 154023 (N.D. Cal. August 16, 2021) the plaintiff (in pro per) was permitted to amend to cure the pleading defect because he had actually, timely

28

exhausted his administrative remedies but not pled that fact.

PLAZA DE JENNINGS & CHIPMAN LLP
ATTORNEYS AT LAW
ALAMEDA