UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TABIA LEE,<br><br>    Plaintiff,<br><br>v.<br><br>FOOTHILL-DE ANZA COMMUNITY COLLEGE DISTRICT, et al.,<br><br>    Defendants. | Case No.  23-cv-03418-EKL<br><br>**ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT WITH LEAVE TO AMEND IN PART AND WITHOUT LEAVE TO AMEND IN PART**<br><br>ECF No. 55 |

This action arises out of the termination of Plaintiff Tabia Lee ("Plaintiff" or "Dr. Lee") from a tenure-track position at Foothill-De Anza Community College District in June 2023. Plaintiff asserts First Amendment claims under 42 U.S.C. § 1983; violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*.; and the California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12900 *et seq*.  Defendants move to dismiss Plaintiff's Second Amended Complaint.  Mot. to Dismiss ("Mot."), ECF No. 55.  Having considered the parties' briefs and oral argument, the relevant law, and the record in this case, the Court dismisses Plaintiff's First Amendment retaliation claim with leave to amend as to two individual Defendants, Thomas Ray and Alicia Cortez, and dismisses Plaintiff's Title VII retaliation claim with leave to amend as to De Anza College and the Foothill-De Anza Community College District.  Plaintiff's remaining claims are dismissed without leave to amend.

**I.    BACKGROUND**

This order assumes familiarity with the facts of the case, the applicable legal standards, and the arguments made by the parties, which are all discussed more completely in the order granting Defendants' motion to dismiss the First Amended Complaint.  *See* Order on Mot. to Dismiss at 1-4 ("prior order" or "MTD Order"), ECF No. 51.  To summarize, Plaintiff is an educational

1   sociologist who was hired by De Anza College ("the College") in August 2021.  Second Am.

2   Compl. ¶ 29 ("SAC"), ECF No. 52.  Plaintiff served as director of the College's Office of Equity,

3   Social Justice, and Multicultural Education, and chair of the Department of Equity, Social Justice,

4   and Multicultural Education.  *Id.* ¶¶ 20, 29.  Plaintiff was terminated in June 2023, after the second

5   phase of a faculty Tenure Review Committee process recommended termination.  *Id.* ¶¶ 231, 235,

6   236.  Plaintiff alleges that she experienced discrimination, retaliation, and censorship at the

7   College due to her views on race and education, and that she was terminated "because of her

8   viewpoints and protected public speech[.]"  *Id.* ¶ 37.

9          Plaintiff filed this action on July 10, 2023, against the College, Foothill-De Anza

10  Community College District ("the District"), Chancellor Lee Lambert ("Lambert"), Trustee

11  Patrick Ahrens ("Ahrens"), Trustee Laura Casas ("Casas"), Trustee Pearl Cheng ("Cheng"),

12  Trustee Peter Landsberger ("Landsberger"), Trustee Gilbert Wong ("Wong"), Vice President of

13  Instruction Christina Espinosa-Pieb ("Espinosa-Pieb"), Dean Alicia Cortez ("Cortez"), Interim

14  Associate Vice President for Instruction Lydia Hearn ("Hearn"), President Lloyd Holmes

15  ("Holmes"), and Interim Associate Vice President for Instruction Thomas Ray ("Ray")

16  (collectively "Defendants").  ECF No. 1.  On September 25, 2023, Plaintiff amended the

17  complaint, asserting claims under Title VI and Title VII of the Civil Rights Act of 1964, § 1983,

18  the California Constitution, the FEHA, and for wrongful termination.  First Am. Compl. ("FAC"),

19  ECF No. 27.

20         On May 7, 2024, Judge P. Casey Pitts granted Defendants' motion to dismiss the First

21  Amended Complaint with leave to amend the claims under § 1983, Title VII, and the FEHA.[1]

22  MTD Order at 1.  Plaintiff's claims based on Title VI, the California Constitution, and wrongful

23  termination were dismissed with prejudice.  *Id.* at 1, 4.  In the Second Amended Complaint,

24  Plaintiff reasserts her First Amendment claims for retaliation and censorship under § 1983, her

25  hostile work environment and retaliation claims under Title VII, and her FEHA discrimination

26

27

28  [1] The FEHA claim was dismissed without leave to amend as to the College and the District, but with leave to amend as to the individual defendants.  MTD Order at 16.

1  claim. The new allegations in the Second Amended Complaint are discussed in more detail
2  below. On June 14, 2024, the District, the College, and the individual defendants filed this motion
3  to dismiss the Second Amended Complaint. ECF No. 55.

4  **II.  REQUEST FOR JUDICIAL NOTICE**

5  Defendants request judicial notice of six exhibits or alternatively ask the Court to deem the
6  documents incorporated by reference in the Second Amended Complaint. Req. for Jud. Notice
7  ("RJN"), ECF No. 56. The exhibits consist of the job description for the Director of the Office of
8  Equity, Social Justice, and Multicultural Education (Exhibit 1); a report entitled "Tabia Lee, EdD
9  Report to De Anza College Academic Senate November 29, 2021" (Exhibit 2); an email exchange
10 between Plaintiff and De Anza College Institutional Research and Planning Chair Mallory Newell,
11 Ed.D. on November 15-16, 2021 (Exhibit 3); a notice of non-renewal dated February 23, 2023
12 (Exhibit 4); a letter dated December 6, 2022, posted on the District's website (Exhibit 5); and the
13 Notice of Case Closure and Right to Sue issued by the State of California Civil Rights Department
14 on September 14, 2023 (Exhibit 6). *Id*. Plaintiff opposes Defendants' request. Opp. at 8 n.1.

15 Defendants' request is granted as to Exhibits 1, 2, 3, 5, and 6. The Second Amended
16 Complaint references each of these exhibits, and the Court accordingly incorporates each of them
17 by reference. *See* SAC ¶¶ 30-35 (Ex. 1), 100-09 (Ex. 2), 87-90 (Ex. 3), 171 (Ex. 5); *see also*
18 *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) ("[A] defendant may
19 seek to incorporate a document into the complaint 'if the plaintiff refers extensively to the
20 document or the document forms the basis of the plaintiff's claim.'") (citing *United States v.*
21 *Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003)). Exhibit 6 is attached to the Second Amended
22 Complaint and may also be considered by the Court. *See Ritchie*, 342 F.3d at 908 (court may
23 consider documents attached to the complaint in ruling on a Rule 12(b)(6) motion).

24 Defendants' request is denied as to Exhibit 4, the notice of non-renewal. The Second
25 Amended Complaint does not refer to or attach this document; nor is it subject to judicial notice.
26 *See* Fed. R. Evid. 201(b) (courts may judicially notice facts that are "not subject to reasonable
27 dispute" because they are "generally known" or "can be accurately and readily determined from
28 sources whose accuracy cannot reasonably be questioned.").

3

## III. LEGAL STANDARD

A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a), and plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. For purposes of ruling on the motion, the Court generally "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, the Court need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).

If dismissal is warranted, the court should grant leave to amend "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted).

## IV. DISCUSSION

### A. Protected Speech Under the First Amendment

Plaintiff alleges First Amendment claims for retaliation and censorship. With respect to retaliation, Plaintiff alleges that the College terminated her employment following a tenure review process because of her allegedly unpopular speech. SAC ¶¶ 231-236. With respect to censorship, Plaintiff alleges that the College declined to promote her workshops on the College's events calendar, de-listed her events from eligibility for professional development credits, and terminated her employment in order to prevent the spread of her views among the College's student body and faculty. *Id.* ¶¶ 254, 259.

"The First Amendment usually prohibits the government from enacting laws that regulate protected speech, and it 'prohibits government officials from subjecting individuals to retaliatory

4

actions after the fact for having engaged in protected speech.'" *Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1174 (9th Cir. 2022) (quoting *Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 474 (2022)). Section 1983 provides a cause of action against individual state officials who deprive a person of their constitutional right to free speech. 42 U.S.C. § 1983. A party asserting such a claim must plausibly allege "(1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law." *Long v. City of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006). The plaintiff "must also demonstrate that the defendant's conduct was the actionable cause of the claimed injury," which requires "both causation-in-fact and proximate causation." *Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

### 1. Protected Speech

Plaintiff's retaliation and censorship claims under the First Amendment require Plaintiff to allege that she engaged in protected speech. When public employees make statements pursuant to their official duties, they "are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). However, public employees do not relinquish their First Amendment rights when they are speaking outside of their official duties on matters of public concern. See *Pickering v. Board of Education*, 391 U.S. 563, 568-70 (1968). Similarly, First Amendment protections may be afforded to "teaching and academic writing" that are "performed 'pursuant to the official duties' of a teacher and professor." *Demers v. Austin*, 746 F.3d 402, 411-12 (9th Cir. 2014). In these contexts, speech is governed by the two-part balancing test set forth in *Pickering*. "First, the employee must show that his or her speech addressed 'matters of public concern.' Second, the employee's interest 'in commenting upon matters of public concern' must outweigh 'the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Id.* at 412 (quoting *Pickering*, 391 U.S. at 568)).

The Ninth Circuit's discussion in *Demers* guides the Court's analysis as to whether Plaintiff's speech relates to "teaching and academic writing." In *Demers*, a tenured professor advocated for substantial reform of a college's mass communications department. *Id.* at 414-15.

5

In the professor's view, the department "had lost a critical connection to the real world of professional communicators" because it overvalued scholarship and undervalued faculty with practical experience. *Id.* The professor's speech commented directly on what, in his view, was the most effective methodology for teaching mass communications. *Id.* Thus, there was a direct link between the professor's speech and the college's teaching methodology or pedagogy.

Here, Plaintiff's speech lacks the direct pedagogical link that was essential to the Ninth Circuit's holding in *Demers*.[2] Plaintiff specifically cites to eight activities that she contends were protected speech, SAC ¶ 240(a)-(h), but seven of these activities relate to administrative matters or policies that have no direct link to teaching or methodologies of teaching. *See id.* For example, Plaintiff points to a report she made to the Academic Senate, in which she expressed dissatisfaction with the limitations of her role at the College. *Id.* ¶ 240(a); *see also* RJN Ex. 2. Plaintiff also criticized the College's policy of giving some faculty "affinity groups" special voting rights in the Academic Senate. SAC ¶ 240(d). But Plaintiff does not allege that these voting rights have any connection to or impact on teaching or pedagogy at the College. *See id.* ¶¶ 162, 165. As a third example, Plaintiff criticized the College for using terms like "Latinx" and "Filipinx" in the College's educational plan. *Id.* ¶¶ 87, 240(c); *see also* RJN Ex. 3. Plaintiff alleges only that the educational plan itself – not the terminology at issue – impacts "curriculum and classroom pedagogy." SAC ¶ 87. In sum, Plaintiff's activities as described in the Second Amended Complaint lack a direct link to teaching or pedagogy, and therefore they do not qualify as protected academic speech.

The eighth activity concerns Plaintiff's criticism of "third-wave antiracism" as expressed in her "publication on this topic in the Journal of Free Black Thought ("Free Black Thought").[3]

---

[2] In the prior order, the Court found that Plaintiff's activities as set forth in the First Amended Complaint were not protected speech because they did not involve teaching or academic writing. MTD Order at 7. In general, the Second Amended Complaint relies on the same activities but recharacterizes them as relating to Plaintiff's teaching duties, or as touching on matters of public concern and pedagogy. But simply labeling the activities as "pedagogical" in nature is insufficient to show that they are protected academic speech. *Twombly*, 550 U.S. at 555 (To state a claim, a plaintiff must allege more than "labels and conclusions.").

[3] According to the Second Amended Complaint, "[t]hird-wave antiracism" became "mainstream in the 2010s" and "teaches that because racism is baked into the structure of society, whites'

6

*Id.* ¶ 240(h). One article was published on January 17, 2023, and was circulated to the College faculty and administration "as early as October 2022." *Id.* ¶ 143. The other article was published on February 28, 2023. *Id.* ¶¶ 45, 257. Plaintiff argues that the articles qualify as protected speech under *Pickering* since they were not published pursuant to her official duties, and they constituted "speech on a matter of public concern."[4] Opp. at 10-11.

Plaintiff has not met her burden to plausibly allege that the Free Black Thought articles constitute speech on "an issue of public concern." *See Demers*, 746 F.3d at 415. "Speech involves a matter of public concern when it can fairly be considered to relate to 'any matter of political, social, or other concern to the community.'" *Id.* (quoting *Johnson v. Multnomah Cnty.*, 48 F.3d 420, 422 (9th Cir. 1995)). "The 'essential question is whether the speech addressed matters of public as opposed to personal interest.'" *Id.* (quoting *Desrochers v. City of San Bernardino*, 572 F.3d 703, 709 (9th Cir. 2009)). The public interest is broadly defined, and the Ninth Circuit has "adopted a 'liberal construction of what an issue of public concern is under the First Amendment.'" *Id.* (quoting *Roe v. City & Cnty. of San Francisco*, 109 F.3d 478, 586 (9th Cir. 1997)). The Court must consider "the content, form, and context of a given statement, as revealed by the whole record. Of these, content is the most important factor." *Id.* (internal citations and quotation marks omitted).

Here, the Second Amended Complaint references the Free Black Thought articles multiple times in passing, but provides no information regarding their "content, form, and context[.]" *Id.*; *see* SAC ¶¶ 45, 143, 232, 240(h), 252, 257. Without this information, the Court is unable to evaluate whether the articles involve matters of public concern. Thus, Plaintiff has not met her burden to show that the articles were protected speech. The Court will provide Plaintiff one final

---

'complicity' in living within it constitutes racism itself, while for black people, grappling with the racism surrounding them is the totality of experience and must condition exquisite sensitivity towards them[.]" SAC ¶ 47.

[4] Plaintiff does not allege that the seven other categories of activities discussed above were conducted outside of her "official duties." *Cf.* Opp. at 5-11 (arguing that Plaintiff's activities constituted "academic employee speech" and, thus, fell within *Demers*). Plaintiff alleges that her role at the College was a "teacher of teachers." SAC ¶ 31. In that role, Plaintiff designed and taught workshops and programs for teachers, administrators, students, and community members, and she also developed workshops and seminars for faculty programs. *Id.* ¶ 32.

7

chance to amend to explain how the Free Black Thought articles qualify as protected speech.

### 2. Retaliation

It remains to be seen whether Plaintiff can plausibly allege constitutionally protected speech based on the Free Black Thought articles. If Plaintiff can do so, Plaintiff still must plausibly allege the remaining elements of a First Amendment retaliation claim: "'that (1) [s]he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct.'" *Capp v. County of San Diego*, 940 F.3d 1046, 1053 (9th Cir. 2019).

The Court previously dismissed the retaliation claim because the allegations in the First Amended Complaint were "impermissibly vague under Rule 8," and did "not specify which of the individual defendants she claims retaliated against her and how, nor did it explain how each defendant's actions proximately caused her harm as required." MTD Order at 8-9. The prior order instructed Plaintiff to "identify the protected speech, how particular defendants violated her free expression rights with respect to that speech, and how defendants' actions caused her injuries." *Id.* at 9. Accordingly, the Court turns to whether Plaintiff's new allegations regarding individual Defendants Holmes, Hearn, Espinosa-Pieb, Ray, and Cortez support a claim for retaliation based on the Free Black Thought articles – assuming, without deciding, that they constitute protected speech.

The new allegations against Holmes do not plausibly state a retaliatory motive. Plaintiff provides no facts as to Holmes' involvement in Plaintiff's tenure review process besides "overr[iding]" the Phase I committee's recommendation of termination and allowing Plaintiff to proceed to Phase II. SAC ¶ 221. The allegation that Holmes apparently opposed Plaintiff's termination indicates a lack (rather than a presence) of retaliatory motive. Plaintiff also alleges that Holmes "participat[ed] in [Plaintiff's] termination with full knowledge that her termination was in retaliation for her protected speech." *Id.* ¶ 247. But this allegation is conclusory, and knowledge alone is insufficient to infer retaliatory motive. *Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741, 751 (9th Cir. 2001). Thus, Plaintiff fails to demonstrate that Holmes's

8

1   actions were motivated by retaliation against protected speech.

2       Plaintiff's new allegations regarding Hearn's involvement in the Phase I tenure review
3   process also fail to establish retaliation. Hearn participated in Phase I of the tenure review, which
4   occurred on November 19, 2021, but not the Phase II tenure review process that led to Plaintiff's
5   termination. SAC ¶¶ 13, 211, 217, 219. Hearn submitted a negative review for Plaintiff in the
6   Phase I tenure review on January 14, 2022. *Id.* ¶ 210. On January 18, 2022, Hearn informed
7   Plaintiff "that the Tenure Review Committee would be unanimously recommending her for
8   termination." *Id.* ¶ 219. But these events took place *before* Hearn could have been aware of
9   Plaintiff's allegedly protected speech in the Free Black Thought articles, which were not circulated
10  until October 2022. Thus, Plaintiff's allegations do not support a retaliation claim against Hearn
11  based on her involvement in the Phase I tenure review process.

12      Plaintiff alleges that Espinosa-Pieb "directed the De Anza communications team to remove
13  all promotion of Dr. Lee's workshops from the College Events Calendar, and de-listed Dr. Lee's
14  events and workshops from eligibility for professional development credits." *Id.* ¶ 248. But
15  declining to promote Plaintiff's speech does not support a First Amendment retaliation claim,
16  since "the First Amendment 'does not prevent the government from declining to express a view.'"
17  MTD Order at 8 (quoting *Shurtleff v. City of Boston*, 596 U.S. 243, 251 (2022)). These new
18  allegations do not support a retaliation claim against Espinosa-Pieb on this basis.

19      In sum, even if Plaintiff could amend the complaint to allege that the Free Black Thought
20  articles were protected speech, she has not identified any facts indicating that Holmes, Hearn, or
21  Espinosa-Pieb retaliated against Plaintiff based on the articles. The Court therefore dismisses the
22  First Amendment retaliation claim with prejudice as to these Defendants. *See Election Integrity*
23  *Project Calif., Inc. v. Weber*, 113 F.4th 1072, 1099 (9th Cir. 2024) ("A 'district court's discretion
24  to deny leave to amend is particularly broad where [the] plaintiff has previously amended the
25  complaint.'") (quoting *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989)).

26      Only the allegations regarding Cortez and Ray plausibly support a prima facie case of
27  retaliatory motive. Cortez and Ray are the only defendants who participated in Phase II of the
28  tenure review process, which culminated with a unanimous report recommending Plaintiff's

9

1    termination on February 7, 2023.  SAC ¶¶ 223, 231.  The temporal proximity between the October

2    2022 circulation and January 2023 publication of the earlier Free Black Thoughts article, the

3    February 7, 2023 termination recommendation, and the March 15, 2023 notice of termination

4    support a prima facie case of First Amendment retaliation against Cortez and Ray.[5]  *See Ariz.*

5    *Students' Assoc. v. Ariz. Bd. of Regents*, 824 F.3d 858, 870 (9th Cir. 2016) ("In cases involving

6    First Amendment retaliation in the employment context, we have held that a plaintiff may rely on

7    evidence of temporal proximity between the protected activity and alleged retaliatory conduct to

8    demonstrate that the defendant's purported reasons for its conduct are pretextual or false.") (citing

9    *Ulrich v. City & Cnty. of San Francisco*, 368 F.3d 968, 979 (9th Cir. 2002)).

10   Accordingly, the Court grants Plaintiff one final opportunity to amend the claim for First

11   Amendment retaliation as to Cortez and Ray.  In any amended complaint, Plaintiff must allege

12   facts showing that one or more of the Free Black Thought articles was protected speech.

### 3. Censorship

14   Plaintiff also alleges that her free expression rights were infringed through censorship.

15   *See* SAC ¶¶ 251-64.  The prior order dismissed the censorship claim, explaining that the

16   "allegations do not suggest any ways in which the College or any of the individual defendants

17   prevented [Plaintiff] from speaking or imposed any sort of prior restraint" but instead suggested

18   that "the College declined to promote, endorse, or circulate Dr. Lee's speech."  MTD Order at 8.

19   Defendants again move to dismiss Plaintiff's censorship claim, and Plaintiff's opposition

20   fails to address this issue.  At the motion hearing, Plaintiff's counsel acknowledged that the First

21   Amendment retaliation and censorship claims are based on the same set of facts.  *See* ECF No. 72

22   at 29:13-23.  Thus, the Court looks to the Second Amended Complaint to determine whether any

23   new allegations support the censorship claim.

24   The Second Amended Complaint again alleges that Defendants "remove[d] all promotion

---

[5] Plaintiff also alleges that Cortez and Ray directed removal of Plaintiff's events from the calendar and de-listed Plaintiff's workshops from eligibility from professional development credits.  *Id.* ¶¶ 242, 244.  As discussed, declining to promote speech does not support a First Amendment retaliation claim.  MTD Order at 8 (quoting *Shurtleff,* 596 U.S. at 251).

1    of Dr. Lee's workshops from the College Events Calendar[ and] de-listed Dr. Lee's events and
2    workshops from eligibility for professional development credits[.]"  SAC ¶ 244.  Plaintiff newly
3    alleges that she was terminated "[e]xpressly to prevent the spread of [her criticism of third-wave
4    antiracism] among the student body and faculty of De Anza, even before the [February 28, 2023
5    Free Black Thought] publication became available[.]"  *Id.* ¶¶ 258-259.

6          The new allegations do not support a claim for censorship because Plaintiff does not allege
7    that any of the Defendants were aware of the February 28, 2023 article, or that any of their actions
8    prevented her from speaking.  Because Plaintiff fails to cure the deficiencies identified in the prior
9    order, and has not suggested that she can amend the complaint to state a plausible claim for
10   censorship, the Court dismisses the censorship claim with prejudice.

           **4.**      **Remedies**

12         In connection with her First Amendment retaliation and censorship claims, Plaintiff seeks
13   damages and injunctive relief in the form of reinstatement to her former position.  Because the
14   Court grants leave to amend the retaliation claim, it considers whether Plaintiff has adequately
15   pleaded the related injunctive relief claim.  The Court finds that she has not.

16         Community colleges "are considered arms of the state" and they cannot be sued directly
17   under § 1983 for injunctive relief.  MTD Order at 9 (citing *Will v. Mich. Dep't of State Police*, 491
18   U.S. 58, 64 (1989)).  Instead, a plaintiff must bring § 1983 claims seeking injunctive relief against
19   individual state officials.  *See, e.g.*, *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 732 (9th
20   Cir. 2022) ("A plaintiff seeking injunctive relief for an ongoing First Amendment violation . . .
21   may sue individual board members of a public school system in their official capacities to correct
22   the violation.").  As explained in the prior order, to state a claim for injunctive relief, Plaintiff
23   must (1) name the individual defendants who have the power to reinstate her in their official
24   capacities, and (2) "identify a practice, policy, or procedure that animates the constitutional
25   violation at issue."  MTD Order at 10 (quoting *Ariz. Students' Ass'n*, 824 F.3d at 865).

26         Plaintiff has addressed the first deficiency by alleging that the Trustee Defendants, sued in

their official capacities, have the authority to reinstate her.[6]  SAC ¶¶ 8-9, 14-19.  However, Plaintiff fails for the second time to allege a practice, policy, or procedure that played a part in the alleged constitutional violations.  *See Hafer v. Melo*, 502 U.S. 21, 25 (U.S. 1991) ("Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, 'the entity's policy or custom must have played a part in the violation of federal law.'") (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).  Accordingly, the request for injunctive relief is dismissed with prejudice.

### B. Title VII Claims

Title VII makes it unlawful for an employer to take adverse employment actions against an employee "because of such individual's race, color, religion, sex, or national origin.'"  *See* 42 U.S.C. § 2000e-2(a).  Here, Plaintiff reasserts Title VII claims for hostile work environment and retaliation against the District and the College.  Plaintiff alleges that she was "subjected to a workplace permeated with racial stereotypes and insults" for which she "submitted multiple grievances" and "complained to her supervisors."  SAC ¶¶ 265-295.

#### 1. Hostile Work Environment

"A hostile work environment claim involves a workplace atmosphere so discriminatory and abusive that it unreasonably interferes with the job performance of those harassed."  *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000).  "Simply causing an employee offense based on an isolated comment is not sufficient to create actionable harassment under Title VII."  *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1113 (9th Cir. 2004) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  In assessing an alleged hostile environment, courts "consider whether, in light of all the circumstances, . . . the harassment is sufficiently severe or pervasive to

---

[6] Trustees sued in their official capacities include moving Defendants Espinosa-Pieb, Lambert, Ahrens, Casas, Cheng, Landsberger, and Wong.  The omission of facts regarding these defendants' participation in the alleged retaliation does not compel dismissal of the injunctive relief claim.  *Riley's Am. Heritage Farms*, 32 F.4th at 732 ("A plaintiff seeking injunctive relief in a § 1983 action against the government 'is not required to allege a named official's personal involvement in the acts or omissions constituting the alleged constitutional violation.'") (quoting *Colwell v. Bannister*, 763 F.3d 1060, 1070 (9th Cir. 2014)).

12

alter the conditions of the victim's employment and create an abusive working environment." *Id.* at 1113-14 (internal quotations omitted). In other words, "context matters" in a hostile work environment claim. *Sharp v. S&S Activewear, LLC*, 69 F.4th 974, 978 (9th Cir. 2023).

The prior order addressed conduct that Plaintiff identified in support of this claim and found the first two examples too "vague" to support a hostile work environment claim. The first was an observation that those who publish in Free Black Thought are sometimes accused of not being the "right" sort of Black voices or of "whitesplaining"; the second was an assertion that deviating from the "orthodoxy, which identifies 'Whiteness,' 'White supremacy,' and 'White colonialism' as the root of all ills, is met at De Anza with severe retaliation." MTD Order at 14-15. The Court also found that Plaintiff's other three allegations fell short of supporting her hostile work environment claim: (1) a statement made to Plaintiff at an October 2021 meeting that certain campus offices were meant for students, faculty, and staff of color; (2) a statement by staff member and program coordinator Tony Santa Ana at a November 2021 meeting "accus[ing] Plaintiff of "White speak,' being 'transactional,' and 'Whitesplaining,'"; and (3) a presentation by a UC Davis staff member exhibiting slides that featured graphics with terms or concepts such as "objectivity," "individualism, or "perfectionism" as elements of "white supremacy culture." *Id.* at 15.

The Court dismissed Plaintiff's hostile work environment claim because, "considered in the context of an academic workplace in which discussing topics related to race appears to have been central to Dr. Lee's job responsibilities, this conduct does not appear severe or pervasive enough to have interfered with Dr. Lee's performance of her job or otherwise alter the conditions of her employment." *Id.* The Court directed Plaintiff to "identify the specific conduct she contends created a hostile work environment and explain why that conduct, when considered in the specific academic context of her position, was sufficiently severe and pervasive to violate Title VII." *Id.* at 16. It concluded that Plaintiff failed to adequately explain how the alleged conduct, considered in the academic context and in the context of Plaintiff's role, was sufficiently severe or pervasive under Title VII. *Id*. at 15-16.

The Second Amended Complaint does not overcome the deficiencies identified in the prior

1  order.  Plaintiff relies on the same alleged facts that the Court already considered and found
2  insufficient to support a hostile work environment claim.  *See id*. at 14-16 (considering allegations
3  in FAC ¶¶ 30, 45, 57, 59-62, 69, 72, 73).  Plaintiff's new allegations do not explain how the
4  alleged conduct created a hostile work environment in the context of her role as faculty director of
5  the Office of Equity, Social Justice, and Multicultural Education.  Instead, the Second Amended
6  Complaint contains vague assertions that the alleged conduct "would be severe and pervasive
7  racial harassment in any context because Defendants continually peddled – and tried to force Dr.
8  Lee to peddle – racial stereotypes[.]"  SAC ¶ 269.  Plaintiff also alleges that the College's "affinity
9  groups" are a "shameful practice of segregation."  Opp. at 19 (citing *id*. ¶¶ 84-86, 110, 165, 174-
10  75, 180).  Although Plaintiff may ideologically oppose the College's practice regarding affinity
11  groups, Plaintiff has not alleged that the College's maintenance of a practice inconsistent with
12  Plaintiff's views created a hostile work environment in the specific context of her role, which
13  required her to engage with a diversity of opinions.  *See Sharp*, 69 F.4th at 978 (noting that
14  "context matters" in a hostile work environment claim).  Ultimately, Plaintiff does not "explain
15  why th[is] conduct, when considered in the specific academic context of her position was
16  sufficiently severe and pervasive to violate Title VII."  MTD Order at 16; *see also McGinest*, 360
17  F.3d at 1113-14.
18        Plaintiff also contends that "[a]ttacking a Black American for 'acting white' is no less a
19  racial epithet then [sic] labeling a Black American by other racial slurs."  SAC ¶ 275.  This
20  allegation appears to be based upon the same "Whitesplaining" comment allegedly made by Mr.
21  Santa Ana to Plaintiff at the November 2021 meeting, discussed above.  *See id*. ¶¶ 61 (describing
22  comment), 119 (referencing same), 275 (referencing same).  Although serious, this isolated
23  statement by one coworker does not establish the pervasiveness required for a hostile work
24  environment claim.  *McGinest*, 360 F.3d at 1113 ("Simply causing an employee offense based on
25  an isolated comment is not sufficient to create actionable harassment under Title VII.").
26        Having had the opportunity to amend and provide additional allegations explaining the
27  severity or pervasiveness within the specific context of her employment, and having failed to do
28  so, Plaintiff's hostile work environment claim is dismissed without leave to amend.

14

### 2.   Retaliation

Plaintiff brings a Title VII retaliation claim against the College and the District. SAC ¶¶ 282-95. To state a prima facie case for Title VII retaliation, a plaintiff must "adequately allege that: '(1) she engaged in an activity protected under Title VII; (2) her employer subjected her to adverse employment action; [and] (3) there was a causal link between the protected activity and the employer's action.'" *Kamas v. Mayorkas*, 107 F.4th 1054, 1059 (9th Cir. 2024) (quoting *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 731 (9th Cir. 1986)).

Plaintiff previously identified a single complaint to Dean Cortez about another instructor accusing her of "getting in the way of anti-racist progress." MTD Order at 13 (quoting FAC ¶ 106). The prior order dismissed the Title VII retaliation claim because it was "not clear from the facts as pleaded that Dr. Lee was complaining about an employment practice she believed violated Title VII, as opposed to a single comment made by another employee." *Id.* at 14. The Court directed Plaintiff to "specifically identify the complaints or grievances she believes she was retaliated against for making, and the adverse employment actions she believes resulted." *Id.*

The Second Amended Complaint alleges generally that Plaintiff engaged in "protected activities" when she "submitted multiple grievances objecting to the hostile environment created as part of the policies, practices, and processes of Defendants" and "complained to her supervisors about the racial epithets and racial stereotypes peddled by [De] Anza in the name of 'antiracism' and 'social justice.'" *Id.* ¶¶ 284, 286. Plaintiff "also spoke publicly and criticized 'third wave antiracism' for peddling racist stereotypes[.]" *Id.* ¶ 287.

Plaintiff's opposition to the motion to dismiss directs the Court's attention to paragraphs 123, 124, 139, 140, 141, and 247 of the Second Amended Complaint for the protected activities in question, with no further discussion. Opp. at 23. These allegations do not resolve the deficiencies identified in the prior order. Most of the referenced paragraphs discuss two grievances that Plaintiff made in March 2022 and November 2022. *See* SAC ¶¶ 123-24, 139-141. Paragraph 247 alleges that Defendant Holmes "retaliated against Dr. Lee for her protected academic speech by participating in her termination with full knowledge that her termination was in retaliation for her protected academic speech[.]" *Id.* ¶ 247. As previously discussed, this allegation is conclusory.

*See supra* Section IV.A.2 (discussing § 1983 retaliation claim).

Even if one or more of the grievances discussed above constituted a protected activity for purposes of a Title VII claim, Plaintiff fails to allege a causal link between any of the grievances and her termination. Causation can be demonstrated through temporal proximity between the protected activity and the adverse employment action, circumstantial evidence of a retaliatory motive, and evidence of pretext. *See, e.g.*, *Bell v. Clackamas Cnty.*, 341 F.3d 858, 865 (9th Cir. 2003); *Anderson v. City and Cnty. of San Francisco*, 169 F. Supp. 3d 995, 1027 (N.D. Cal. 2016). Plaintiff argues that "there can be no dispute about but-for causation," but offers no facts to establish causation under any of these theories. *See* Opp. at 24. Plaintiff cites paragraphs 178 through 181 and 202 through 205 of the Second Amended Complaint in support of this conclusion, but these allegations do not establish the necessary causal connection between her grievances or complaints to the College and her termination. For example, paragraphs 178 through 181 describe criticism Plaintiff alleges she received due to dissenting viewpoints she expressed publicly, but do not connect the grievances she submitted to the Tenure Review Committee's recommendation of termination. Paragraphs 202 and 203 reference excerpts from the District Tenure Review Handbook; and paragraphs 204 and 205 concern criticism of Plaintiff's ideas during Phase I of the tenure review process, which notably did not result in Plaintiff's termination. These allegations do not establish causation.

Plaintiff argues that she was terminated, but fails to identify any allegations that establish "a causal link between the protected activity" and her termination. *See Kamas*, 107 F.4th at 1059. The Court therefore dismisses the Title VII retaliation claim with leave to amend.[7] Plaintiff shall have one final opportunity to amend the complaint to state a plausible claim for retaliation.

**C.   FEHA**

Finally, Plaintiff asserts a race-based discrimination claim under the FEHA. Cal. Gov't Code § 12900 *et seq.* The prior order dismissed Plaintiff's FEHA claim against the College and

---

[7] Because the Court finds Plaintiff fails to adequately plead her Title VII claim, the Court does not reach Defendants' argument as to administrative exhaustion under Title VII. *See* Mot. at 21-22.

the District with prejudice, noting that Plaintiff conceded the state entities are immune under the Eleventh Amendment. The prior order also dismissed this claim as to individual defendants Holmes, Cortez, Espinosa-Pieb, Ray, and Hearn with leave to amend because the FEHA claim, like Plaintiff's Title VII claims, was not adequately pleaded. MTD Order at 16. Without explanation, Plaintiff reasserts the FEHA claim against the District and the College. Because this claim was already dismissed with prejudice as to the College and the District, this section addresses the Plaintiff's FEHA claim only as to the individual Defendants.

### 1. Plaintiff Fails to State a Discrimination Claim Under the FEHA.

Defendants argue that the Second Amended Complaint fails to address or remedy the concerns raised in the prior order. Plaintiff argues that her FEHA claim survives "[f]or the same reasons . . . regarding [the] Title VII claim[.]" Opp. at 24. As discussed above in Section IV.B.1, Plaintiff's related Title VII claim fails because Plaintiff relies on the same set of facts that the Court already considered and found insufficient to support a hostile work environment claim.[8] Nor has Plaintiff amended the complaint to add any new allegations in support of the FEHA discrimination claim; the allegations are identical in substance. In addition, Defendants Holmes, Cortez, Espinosa-Pieb, Ray, and Hearn are identified only in the caption of Count 5, and no reference is made to them in the ensuing paragraphs. *See* SAC ¶¶ 296-304. Because Plaintiff has not amended the FEHA claim to include any new allegations as to the individual Defendants, this claim is dismissed with prejudice.

### 2. Plaintiff Has Not Exhausted Administrative Remedies.

Defendants also argue that Plaintiff's FEHA claim is barred because she failed to exhaust administrative remedies before filing this action. Mot. at 24 (citing RJN Ex. 6).

A plaintiff must exhaust administrative remedies before bringing a FEHA claim by filing a complaint with the California Civil Rights Department ("CRD") and obtaining a right-to-sue

---

[8] California courts apply the same substantive legal analysis to FEHA and Title VII discrimination claims. *See e.g.*, *Barefield v. Bd. of Trustees of Calif. State Univ., Bakersfield*, 500 F. Supp. 2d 1244, 1259 n.4 (E.D. Cal. 2007) (citing *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005)).

17

letter.[9] *Rojo v. Kliger*, 52 Cal. 3d 65, 83 (1990) (holding that exhaustion of FEHA's administrative remedies is a precondition to bringing a civil suit on a statutory cause of action); *see also Wills v. Superior Court*, 195 Cal. App. 4th 143, 156 (2011) (noting that FEHA's exhaustion requirement furthers social and governmental interests such as allowing the DFEH "the opportunity to resolve disputes and eliminate unlawful employment practices through conciliation."). A plaintiff must plead and prove timely exhaustion of administrative remedies under the FEHA. *Kim v. Konad USA Distrib., Inc.*, 226 Cal. App. 4th 1336, 1345 (2014) (citing *Garcia v. Los Banos Unified Sch. Dist.*, 418 F. Supp. 2d 1194, 1215 (E.D. Cal. 2006)). The failure to do so requires dismissal. *See Yurick v. Superior Court*, 209 Cal. App. 3d 1116, 1123 (granting summary adjudication for defendant on plaintiff's age harassment claim under FEHA after finding that the claim was not encompassed in the administrative charge for a separate gender discrimination claim).

The original complaint alleged that Plaintiff had exhausted administrative remedies by obtaining a right-to-sue letter, but no such letter was submitted with the complaint. *See* Compl. at 49.[10] The First and Second Amended Complaints both alleged administrative exhaustion and attached a right-to-sue letter from the CRD. FAC ¶ 273; SAC ¶ 303, Ex. B. Plaintiff filed this action on July 10, 2023. ECF No. 1. The CRD letter, dated September 14, 2023, was issued more than two months after the commencement of this action, meaning that Plaintiff did *not* exhaust administrative remedies before commencing this action.[11]

Plaintiff argues that "the subsequent issuance of the [right-to-sue] letter prior to trial cure[s] any procedural defect." Opp. at 24. Plaintiff relies on *Sutton v. Derosia* to support this

---

[9] In July 2022, the Department of Fair Housing and Employment ("DFEH") became the CRD. *See* https://calcivilrights.ca.gov/aboutcrd/.

[10] The Court cites to page numbers in the initial complaint because it did not include paragraph numbers. The CRD right-to-sue letter was attached to the First Amended Complaint with no identifying exhibit number.

[11] It is one thing to argue that the Court should excuse Plaintiff's failure to exhaust administrative remedies because Plaintiff (belatedly) obtained a right-to-sue letter after she commenced litigation. But it is another to represent to the Court that Plaintiff had obtained a right-to-sue letter before filing the original complaint, which Plaintiff had not done. The Court admonishes Plaintiff not to make factual misrepresentations to the Court. *See* Fed. R. Civ. P. 11(b).

1    proposition. No. 11-cv-01426, 2012 WL 4863788 (E.D. Cal. Oct. 12, 2012). *Sutton* reasoned that

2    FEHA is often interpreted consistently with Title VII, and thus the court applied Title VII

3    exhaustion principles to FEHA. *Id.* at *22 (observing that "the Ninth Circuit has allowed a

4    plaintiff proceeding under Title VII to cure a prematurely filed lawsuit with the subsequent receipt

5    of a 'right to sue' letter"). The flaw in this reasoning is that the California Supreme Court has

6    ruled that under FEHA, unlike in the Title VII context, administrative exhaustion is a

7    jurisdictional prerequisite to bringing a civil suit. *Rojo*, 52 Cal. 3d at 83-85. The Court declines to

8    follow *Sutton* because this Court is bound to follow the California Supreme Court's rulings on

9    questions of California law.[12] *Doe v. Uber Techs., Inc.*, 90 F.4th 946, 949 (9th Cir. 2024).

10   Because Plaintiff failed to obtain a right-to-sue letter before bringing this lawsuit, Plaintiff failed

11   to exhaust her administrative remedies. Therefore, due to Plaintiff's failure to exhaust

12   administrative remedies, and for the reasons discussed in the previous section, the Court dismisses

13   Plaintiff's FEHA claim with prejudice.

14   **V.    CONCLUSION**

15       For the foregoing reasons, Plaintiff's First Amendment retaliation claim is dismissed with

16   leave to amend as to defendants Ray and Cortez, and Plaintiff's Title VII retaliation claim is

17   dismissed with leave to amend as to the District and the College. Plaintiff's remaining claims are

18   dismissed with prejudice. All individual defendants in their official and individual capacities

19   other than Ray and Cortez are dismissed with prejudice. Plaintiff may file an amended complaint

20   consistent with this Order within 21 days. Plaintiff shall not add any new claims or parties

21   //

22   //

---

[12] Plaintiff also cites *James v. United Furniture Workers Local 89262*, No. 21-cv-3893-JCS, 2021 WL 3616776, at *9-10 (N.D. Cal. 2021). But *James* did not hold that a belatedly obtained right-to-sue letter satisfies the administrative exhaustion requirement. The circumstances of the plaintiff's administrative exhaustion under FEHA were unclear, so the court dismissed the claim with leave to amend "if [plaintiff] can allege such compliance," which would depend on "whether and when he received a right-to-sue letter from the DFEH." *Id.* at *10.

1  without leave of court, and the amended complaint shall not reassert claims or defendants that
2  have been dismissed with prejudice.
3  **IT IS SO ORDERED.**
4  Dated: February 23, 2025

Eumi K. Lee
United States District Judge